[Civ. No. 9646. Fourth Dist., Div. Two. Feb. 19, 1971.]

LORAN A. NORTON, Plaintiff and Appellant, v.
CITY OF SANTA ANA et al., Defendants and Respondents.

## COUNSEL

Frederick E. Hopper for Plaintiff and Appellant.

William L. Mock, City Attorney, and James A. Withers, Assistant City Attorney, for Defendants and Respondents.

## OPINION

**KERRIGAN, J.**—Petitioner, a former police lieutenant of the City of Santa Ana, appeals a superior court judgment denying mandamus relief wherein he sought reinstatement following a decision of the Santa Ana Personnel Board upholding his dismissal for violation of departmental rules and regulations prohibiting employee insubordination, misconduct, and failure to reasonably cooperate with his fellow and superior officers.

In seeking reversal, petitioner raises several points stated in varying ways. The crucial issues may be defined as follows: (1) Insufficiency of the evidence to sustain the board's findings and decision; and (2) assuming the evidence is sufficient to uphold the findings and decision, the police rules and regulations are violative of First Amendment concepts.

This case is only a part of a greater controversy involving the Santa Ana Chief of Police, Edward J. Allen, and several police officers. The conflict between the chief and the officers apparently developed as early as 1964 when the chief discovered what he believed to be a John Birch Society conspiracy within the department to subvert his authority. (*Hopper* v. *Allen*, 266 Cal.App.2d 797, 798 [72 Cal.Rptr. 435].)

Petitioner was employed as a peace officer by the City of Santa Ana in March 1956. In November 1964 he was dismissed by the chief for misconduct and insubordination. The personnel board ordered him reinstated in June 1965. On May 9, 1968, he was again dismissed by the chief for misconduct, failure to observe department rules, and failure to cooperate reasonably with his superiors and fellow employees.

Petitioner sought to set aside his last dismissal in an administrative hearing before the personnel board. Failing in that, he unsuccessfully attempted to gain extraordinary relief in the superior court.

Section 1008 of the Santa Ana City Charter provides as follows:

"SECTION 1008. SUSPENSION, DEMOTIONS, DISMISSALS.

"An employee . . . holding a position in the Competitive Service shall be subject to . . . dismissal from his position . . . Each or any of these actions relating to . . . dismissal may be taken by the officer having power of appointment to the position on the grounds of incompetency, inefficiency, dishonesty, misconduct, insubordination, failure to observe department or City rules . . . or failure to cooperate reasonably with his superiors or fellow employees."

In November 1965, the Santa Ana Police Department also promulgated

a set of rules and regulations governing the conduct of police officers. The rules pertinent to this appeal follow:

"10.39 CONDUCT—PERSONAL:

"(Employees) . . . shall not be guilty of acts which are subversive to the good order and decipline of the Department, or acts which tend to bring discredit to the Department, even though such conduct is not specifically set forth in these rules.

"10.52 CRITICISM:

"An employee shall not destructively criticize the Department or its policies, programs, actions, fellow officers, or Superior Officers; or make any statements which tend to interfere with the reasonable management and discipline of the Department.

"10.76 GOSSIP:

"An employee shall refrain from discussing the personal conduct or character of another employee to his discredit, . . .

"10.127 RESPECT OF SUPERIOR OFFICER:

"An employee shall be respectful of superiors at all times, recognizing their rank and obeying their orders. . . ."

The evidence before the board, as contained in the statement of charges and answers thereto, reflects the following chronology of events:

(a) *2/11/67*—Petitioner filed a defamation action (libel and slander) against the city, the chief of police, and the city manager, Orange County Superior Court action No. 151775. Demurrers were interposed to this action. Suffice it to say that the first, second and third amended complaints contained averments not even related to any issue in the lawsuit; the irrelevant allegations accused the chief of (1) "viciousness," (2) "going after" honest police officers within the department who would not do his bidding, (3) demanding that officers perform dishonest deeds to keep their jobs, and (4) threats that if the officers refused, the chief would "break" the officers; the complaints also charged that the chief was unable to keep crime in check or otherwise perform his responsibilities as head law enforcement officer of the municipality. The board found that this act constituted a violation of rules 10.76 (discussing the personal conduct or character of an employee to his discredit), 10.39 (acts inimical to the good order and discipline of the department), 10.52 (destructive criticism of the department, fellow officers, or superiors), and 10.127 (disrespect of superior officers).

(b) *3/3/67*—Petitioner sued the chief of police again for libel and slander, Orange County Superior Court action No. 152136. He charged the chief with making and publishing several false and malicious statements condemning him, and prayed for damages in the sum of $60,000. The board found that the filing of this action also violated rules 10.76, 10.39, 10.52, and 10.127.

(c) *9/8/67*—Petitioner's attorney filed a document entitled "Notice of Malicious Conduct . . . Demand for Hearing, Investigation and Sanctions . . . ." with the City of Santa Ana, the import of which was to accuse the chief of police and the city manager of harassing, annoying and verbally abusing the petitioner on August 30, 1967, when he was purportedly interrogated by the chief for three hours with the use of a tape recorder regarding a magazine article. Copies of the notice and demand were circulated to the local press. The board found that this document constituted a violation of rules 10.39 and 10.52.

(d) *10/9/67*—Petitioner filed a "Demand for Hearing" with the personnel board wherein he charged that after he had been reinstated by the personnel board (on June 20, 1965, following the first dismissal), he had been assigned to a "graveyard shift," and isolated in a small office where his sole function was to review reports, and requested that the chief of police and city manager be required to show cause why they should not be required to reassign him to a regular rotational shift and desist from continuing to annoy, harass and be prejudiced against him. This document was found to be in violation of rules 10.39 and 10.52.

(e) *10/20/67*—A second copy of the above "Demand for Hearing" was served upon the chairman of the personnel board with a covering letter.

(f) *4/11/68*—Petitioner filed an affidavit in the superior court in *Hamm* v. *City of Santa Ana*[1] in which he declared that the sworn statement of Acting Captain Gross, filed in the same action, contained "misleading statements," "vague and erroneous conclusions," and that one statement is "little more than a thinly veiled attempt to deceive the court." Petitioner concluded by stating that Captain Gross' declaration "violates basic fairness and exceeds the propriety of advocacy proceedings." The board found this affidavit to be a violation of rules 10.52, 10.76 and 10.127.

(g) *4/29/68*—Petitioner's attorney filed a document entitled "Notice of Malicious Conduct, Demand for Tape, Demand for Hearing . . . ."

---

[1]Subsequently reported at 273 Cal.App.2d 84 [78 Cal.Rptr. 102].

with the personnel board, copies of which were circulated to the press, wherein it was charged that on April 24, 1968, the chief again subjected him to an intimidating taped interrogation relative to petitioner's declaration in *Hamm* v. *Santa Ana, supra.* The board found this to be in violation of rules 10.52 and 10.127.

In his answer to the statement of the charges, petitioner admitted the preparation and dissemination of the above documents. At the hearing before the board, the appointing authority introduced the documents and rested.

The board concluded that the foregoing acts constituted misconduct, insubordination, and failure to cooperate reasonably with his superiors, and that the penalty of dismissal was warranted.

■ In reviewing the decision of a local administrative proceeding, both the trial court and the reviewing court are required to determine whether there is substantial evidence to support the agency's (board's) findings. (*Keithley* v. *Civil Service Bd.,* 11 Cal.App.3d 443, 448 [89 Cal.Rptr. 809]; *O'Neal* v. *City etc. of San Francisco,* 272 Cal.App.2d 869, 871 [77 Cal.Rptr. 865]; *Le Strange* v. *City of Berkeley,* 210 Cal. App.2d 313, 321 [26 Cal.Rptr. 550]; see Code Civ. Proc., § 1094.5.)

■ In applying the foregoing substantial evidence test, it is unnecessary for this court to repeat any of the occurrences which preceded the petitioner's ultimate dismissal. The evidence is conclusive that he demonstrated disloyalty, disrespect, and hostility to the chief and other superiors, including Captain Gross. His conduct was subversive to the good order of the department. ■ The discharge of a police officer for insubordination and misconduct is justifiable where there is proof that the officer bears an obvious animosity towards his chief and where he is orally discourteous, disloyal and abusive to his superior. (*Cook* v. *Civil Service Commission,* 178 Cal.App.2d 118, 134 [2 Cal.Rptr. 836].)

■ Petitioner's argument that there was no evidence before the board is not convincing. There was no issue as to the source of the documents, only whether they constituted a violation of the aforesaid rules.

■ Petitioner next maintains that the rules in question place an unconstitutional restriction on his right of free speech.

■ Although an individual can claim no constitutional right to obtain public employment or to receive any other publicly conferred benefit, the government cannot condition admission to such employment or receit of such benefits upon any terms it may deem to impose. (*Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 503-504 [55 Cal.

Rptr. 401, 421 P.2d 409].) ▮ The government is not free to impose unreasonable conditions. (*Keyishian* v. *Board of Regents of U. of St. of N.Y.,* 385 U.S. 589, 605-606 [17 L.Ed.2d 629, 641-643, 87 S.Ct. 675, 685].) However, when circumstances inexorably so require, the government may impose conditions upon the public employee despite a resulting qualification of constitutional rights. (*Bagley* v. *Washington Township Hospital Dist., supra,* p. 505.)

▮ When such a conflict does arise, the governmental agency seeking to impose restrictions on the exercise of an employee's constitutional rights must demonstrate that: (1) the governmental restraint rationally relates to the enhancement of the public service; (2) the benefits that the public gains by the restraint outweigh the resulting impairment of the constitutional right; and (3) no alternatives less subversive to the constitutional right are available. (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 501-502.) ▮ In other words, a public employee may speak freely so long as he does not impair the administration of the public service in which he is engaged. (*Belshaw* v. *City of Berkeley,* 246 Cal.App.2d 493, 497 [54 Cal.Rptr. 727].) Similarly, a public employee may engage in political activity providing it does not affect the administrative functioning or public integrity of the governmental agency. (*Fort* v. *Civil Service Commission,* 61 Cal.2d 331, 337-338 [38 Cal.Rptr. 625, 392 P.2d 385].)

▮ Applying the *Bagley* formula to the rules and regulations of the Santa Ana Police Department, the limited restrictions on the policeman's conduct are valid. The para-military nature of a police force and the need for loyalty have long been recognized in California. (See *Cook* v. *Civil Service Commission, supra,* 178 Cal.App.2d 118, 134; see also *State* ex rel. *Curtis* v. *Steinkellner,* 247 Wis. 1 [18 N.W.2d 355, 358].) The prohibitions on criticism and gossip are such that any employer, public or private, would do well in adopting such a policy so as to promote harmony among employees and their superiors. The mandate that employees conduct themselves properly and not do any acts which are subversive to the good order and discipline of the department is also reasonable. The rules involved in this appeal seek to enhance the service afforded by the department. The right of a police officer to make vicious charges against his chief and widely disseminate them cannot be compared with the benefits that the public derives by having a harmonious and efficient police force. The rules before us constitute a necessary restriction on the exercise of the constitutional right of free speech. They are no broader than required to preserve the efficiency and integrity of the department. (*Fort* v. *Civil Service Commission, supra,* 61 Cal.2d 331, 338.)

■ Petitioner also contends that he is being denied his constitutional right of access to the courts, since his dismissal was, at least in part, occasioned by his suits for libel and slander against Chief Allen. Two distinct considerations seem to be involved in the contention.

The first is whether the speech, since it was contained in a verified complaint, is entitled to any different consideration than the other speech involved herein. It is not. Although the speech contained in the complaint for libel and slander may be privileged (see Civ. Code, § 47, subd. 2), may have been uttered without actual malice (see *New York Times* v. *Sullivan*, 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]), or may be true (see *Washer* v. *Bank of America,* 87 Cal.App.2d 501, 509 [197 P.2d 202]), this case does not involve the law of defamation. In the case at bar we can see no reason to differentiate between the speech contained in a "demand for hearing" and that contained in a complaint for libel and slander. The question in both instances is the same: do the regulations restricting the exercise of petitioner's constitutional rights satisfy the *Bagley* test? The fact that the speech is contained in a legal document should not entitle it to different treatment. Any other decision would invite chaos by allowing the courts to become sanctuaries for personal vendettas, and make it possible for the malevolent public employee to insulate himself from the consequences of irresponsible acts.

The second consideration concerns the board's findings that petitioner's conduct relating to the lawsuit violated departmental regulations. The defamation actions must be considered in their specific context, in the light of all the other evidence. Unquestionably, these actions arose from the overall controversy in the department, and were related to the performance of official duties by both Lieutenant Norton and Chief Allen. The suits were another weapon which petitioner employed in his campaign against the chief.

Applying the *Bagley* test in the light of these factors, petitioner's "access to the courts" was not unduly restricted. A government employee should no more enjoy the right to wrap himself in the flag of constitutional protection against every condition of employment imposed by government than the government should enjoy an absolute right to strip him of every constitutional protection. (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 505.) The departmental rules do not impose an absolute prohibition against resort to the courts, but were only applied to the actions herein. It was not that petitioner filed an action; rather, it was that he filed the specific actions against the chief and others for defamation. The suits for defamation constituted a direct challenge to the structure of the department and, as such, were undeniably disruptive and likely to impair the efficiency of the department.

The application of the departmental rules to the instant situation was justified.

Petitioner's reliance on *Pickering* v. *Board of Ed. Tp. H.S. Dist. 205, Ill.,* 391 U.S. 563 [20 L.Ed.2d 811, 88 S.Ct. 1731], is not persuasive; in *Pickering,* the act of a school teacher, in writing and sending a letter to a local newspaper in connection with a proposed tax increase sponsored by the board of education, which letter was critical of the board in the way it had handled past proposals to raise revenue for schools, was deemed insufficient grounds for upholding the teacher's dismissal; the court rationalized that the funding of schools is a matter of public interest, and that the public has a right to know from teachers, as well as any source, whether their tax money is being wisely spent. In the case under review, no matter of great public concern or benefit was involved in the petitioner's attack on the chief or other officials. It was a personal vendetta, a direct challenge to the authority of the chief of police to manage and supervise his department, the effect of which was to create internal dissension on a grand scale if allowed to continue.

In his final argument against his dismissal, petitioner maintains that his proficiency and efficiency were good and there was, therefore, no relationship between his dismissal for violation of police department rules and his employment as a police officer. The argument is specious. A department head has a right to exercise supervision to the end that discipline may be maintained so as not to disrupt or impair the public service. (*Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 679 [62 P.2d 1047].)

The judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied March 10, 1971, and appellant's petition for a hearing by the Supreme Court was denied April 14, 1971.