[Civ. No. 3088. Fifth Dist. Feb. 24, 1978.]

FRANK UNRUH, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF SELMA,
Defendant and Respondent.

**COUNSEL**

Stephen S. Carlton, Howard K. Watkins and Alan Yengoyan for Plaintiff and Appellant.

Paterson & Taggart and John Liebert for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Appellant, Frank Unruh, a four-year employee of the Selma Police Department, was dismissed from his employment by the city council. After a two-day hearing the personnel commission upheld the dismissal. He petitioned the superior court for writ of administrative mandamus (Code Civ. Proc., § 1094.5). The cause was submitted on the record of the administrative hearing before the personnel board. The trial court, after exercising its independent judgment on the evidence (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]), entered findings and a judgment denying relief. On this appeal from the superior court judgment appellant urges that the crucial findings of the court are not supported by the evidence and his discharge constituted an impermissible penalty imposed for the exercise of his constitutional rights.

The controversy evolves from appellant's course of conduct and circumstances surrounding the preparation and mailing by appellant on May 18, 1974, of a six-page single-spaced typewritten letter to State Senator George Zenovich concerning Chief of Police James Brockett and the operation of the Selma Police Department. More specifically, he charged the chief with criminal acts, fraud, and improprieties of an official and personal nature, including allegations that Brockett opened mail which arrived at the police department addressed to other officers, that Brockett may have used his office to order private patrols by police officers to protect property of a corporation of which Brockett was vice president and to order department personnel to perform work on that property, that he was absent from his post on numerous occasions, that he repeatedly falsified reports of how much time he worked, that he used the police radio to arrange personal business, and that there were aspects of training and equipment in his department which were substandard. Because he felt his position would be precarious should the contents of the letter be published, appellant requested that the letter be kept confidential.

Copies of the letter were given by appellant to Larry Carroll, a reporter for the Fresno Bee[1] and Julio Calderon,[2] a newsman for a major television station in Fresno, with the understanding that they would investigate the charges but that they would not publicize the letter or its contents. However, in answer to a question as to why he gave the letter to the media, appellant in part stated, "there was only three, Senator Zenovich and Channel 24 and Fresno Bee, that one of these agencies would do something about it or investigate it at least."

Senator Zenovich sent the letter to the District Attorney of Fresno County, who in turn delivered it to Chief Brockett on June 24. On the same date appellant was dismissed by the chief.[3] The television and newspaper publicity was pervasive concerning the letter and the dismis-

---

[1] Larry Carroll gave the letter to a Mr. Baker of the Fresno Bee without appellant's knowledge or permission.

[2] Sergeant Joe White of the Selma Police Department testified that appellant told him "... he had been on friendly terms and in contact with a reporter from KMJ TV by the name of Julio Calderon and he told me, quote, if you ever want to stir up any sh— [scatological term] in Selma contact Julio Calderon. He's got a way to go, he is not afraid to take on the City of Selma or Chief Brockett unquote."

[3] The charges upon which the June 24 dismissal was based did not include the Senator Zenovich letter but were predicated upon incompetency. At a subsequent personnel hearing, unrelated to the current proceedings, the charges were determined to be unfounded and appellant was ordered reinstated.

sal. The barrage of newspaper articles included 47 articles in the Fresno Bee between June 26, 1974, and May 7, 1975, and 43 articles in the Selma Enterprise between June 27, 1974, and May 8, 1975.

In due course the city council referred the letter to the Fresno County District Attorney's office for investigation of the charges. The results of the investigation were sent to the city council on March 11, 1975. On April 9, 1975, appellant was discharged. The discharge was grounded upon the Senator Zenovich letter and "[b]ehavior and acts, either during or outside of duty hours, which the City Council finds to be incompatible with and/or inimical to the public service." In the subsequent hearing before the personnel commission it affirmed the dismissal, basing its action upon critical statements made to other police officers during and after the preparation of the letter which collectively, according to the findings, constituted disobedience of several police regulations, insubordination, discourteous and disrespectful conduct, gossiping about a member of the department, and publicly criticizing the official action of a superior officer, all of which constituted behavior and acts incompatible with and inimical to the public service. (Gov. Code, §§ 19572, 19251.)

Following action of the personnel commission upholding the dismissal, the superior court, based upon the record before that commission, also upheld the dismissal. On appeal, this court, of course, reviews the judgment of the superior court. Because of their length it would be impractical to attempt to accurately summarize that court's findings and conclusions. Accordingly, attached as appendix 1 are the findings crucial to the disposition of this cause. Omitted findings in appendix 1 consist of the recitation of evidentiary facts otherwise set forth herein or other matters not properly included in the findings.

■ Adverting to the governing legal principles, it is established that a public employee is entitled to First Amendment protections which include the right, within limits, to criticize and comment upon matters touching the public service in which the employee is engaged. (*Pickering v. Board of Education* (1968) 391 U.S. 563 [20 L.Ed.2d 811, 88 S.Ct. 1731];[4] *Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409].) An employee's constitutional

---

[4]In the case at bench, appellant's letter to Senator Zenovich was also entitled to protection under article I, section 3 of the California Constitution, which provides: "The People have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." However, the copies sent to the news media would not be protected under this section.

rights, however, are not absolute. "The problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." (*Pickering* v. *Board of Education, supra,* 391 U.S. at p. 568 [20 L.Ed.2d at p. 817].) Similarly, our Supreme Court in *Bagley, supra,* observed: "This court has recognized the right of governmental agencies to preserve their harmonious operation by restricting such political activities as directly threaten administrative disruption or a loss of integrity. When, however, the sweep of the restrictions imposed extends beyond the area of permissible limitation, we are obliged to strike down such strictures and any official act predicated upon them." (65 Cal.2d at p. 511.) The *Bagley* court also stated that: "We have recognized that administrative disruption may ensue from the participation of a public employee in a campaign for or against his own superior and that the state may meet such danger by specific restriction." (65 Cal.2d at p. 508.) ■ The *Bagley* court then proceeded to lay down the applicable test, stating that to justify restrictions on the exercise of constitutional rights the government must show: "(1) [T]hat the . . . restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints outweigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available." (65 Cal.2d at pp. 501-502.)

Thus, whether the restriction on speaking out is permissible depends upon a weighing of the ambient facts and circumstances surrounding each case. The permutations of those facts and circumstances may on balance tip the scale one way or the other. (See *Pickering* v. *Board of Education, supra,* 391 U.S. at pp. 569-572 [20 L.Ed.2d at pp. 817-819]; *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633].) One significant consideration is whether the employee's criticism is "at a proper time and in an appropriate place and manner." (*Adcock* v. *Board of Education* (1973) 10 Cal.3d 60, 69 [109 Cal.Rptr. 676, 513 P.2d 900].) Significant state interests which must be considered are: maintaining proper employer-employee relations (see *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d at p. 508); whether the person involved is in a direct working relationship with the person affected by the publications, the effect on efficiency and harmony, the need for loyalty and confidentiality, and the effect on discipline (see *Pickering* v. *Board of Education, supra,* 391 U.S. at pp. 568-570 [20 L.Ed.2d at pp. 817-818]); in police officer cases it is imperative that special emphasis be placed upon

the paramilitary nature of police operations; the necessity of developing and maintaining discipline, morale, loyalty, confidentiality and efficiency of the force with view toward the proper protection of the public safety, which is the primary objective and function of a police department (see *Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 312 [141 Cal.Rptr. 354]; *Norton* v. *City of Santa Ana* (1971) 15 Cal.App.3d 419, 426 [93 Cal.Rptr. 37]; *Cook* v. *Civil Service Commission* (1960) 178 Cal.App.2d 118, 134 [2 Cal.Rptr. 836]; *Hanneman* v. *Breier* (7th Cir. 1976) 528 F.2d 750, 754).

The case at bench, of course, is a police discharge case involving a direct working relationship between the discharged officer and his chief in a relatively small town police force. ■ Our task in applying the legal test to the facts is somewhat lightened by appellant's concession at the personnel commission hearing[5] that if the charges in appellant's letter were made willfully, recklessly and irresponsibly the city council was right in discharging him—thus conceding that appellant, under these circumstances, would be entitled to no constitutional protections and that his conduct was violative of Government Code section 19572 and police department regulations set forth in the findings. (See *Beauharnais* v. *Illinois* (1952) 343 U.S. 250, 256-257 [96 L.Ed. 919, 927-928, 72 S.Ct. 725].) The parties tried the case on this theory and are therefore bound by it on appeal. (*Horn* v. *Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 605 [39 Cal.Rptr. 721, 394 P.2d 561] (cert. den., 380 U.S. 909 [13 L.Ed.2d 796, 85 S.Ct. 892]); *Sommer* v. *Martin* (1921) 55 Cal.App. 603, 609 [204 P. 33].)

■ Our inquiry therefore is narrowed to determining whether the evidence under the appropriate legal standard was sufficient to support the conclusion that the charges were willfully, recklessly and irresponsibly made. ■ In reviewing the findings and judgment, we "must uphold the trial court's determination as to the basis of the administrative action if supported by substantial evidence." (*Adcock* v. *Board of Education, supra,* 10 Cal.3d 60, 66; *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].) The substantial evidence rule directs that "all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and*

---

[5]Since the cause was tried upon the transcript of the personnel commission hearing, the same stipulation bound the parties before the superior court.

*disregards the contrary showing.'* [Citation.] All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

Cognizant of these rules controlling appellate review, we turn to the evidence, both direct and circumstantial, and the reasonable inferences that may be drawn therefrom supporting the trial court's findings and conclusions.

Appellant started his employment as a patrolman in 1970. He was a thoroughly trained and experienced law enforcement officer, including formal school training and experience in law enforcement investigation and criminal procedures. He acknowledged that he had read the police department rules and regulations and was familiar with them.

When appellant wrote the Senator Zenovich letter he was president of the Selma Police Officers Association and wrote the letter on the stationery of that organization. He admitted that he did not have the authority of the association to write the letter on the association's behalf and that the letter was written without the association's knowledge. There had been some developing tension between the appellant and the chief by reason of appellant's efforts to have the chief removed from meet and confer discussions concerning departmental employment matters—referred to by appellant's counsel as a "power struggle" between appellant and his chief.

Before sending the letter appellant talked with an attorney about his concern, who advised him the charges were very serious and said that he (the attorney) was precluded from becoming involved because of a conflict in interest and that the appellant should consult another attorney. The appellant did not seek further consultation with counsel before writing the letter.

The 18-page report of the district attorney's investigation was received in evidence, not for the purpose of showing the truth or falsity of the charges or matters recited therein, but on the issue of appellant's intent and whether or not he acted in good faith and to show the information that the city council considered when it made its decision. That report concluded, "that though there was some evidence which tended to show problems or irregularities in the police department," they were not any different than "most any department of this kind and size" and "are

matters for City Officials and do not involve the District Attorney's Office." The report further concluded that "there is no basis for legal action by" the district attorney's office and "there is inconclusive evidence, in my opinion, of a corroborative nature to establish any act or acts of misfeasance and malfeasance by Chief Brockett or Captain Fowler in the running of the Selma Police Department. . . ." Mayor Howard testified that in reliance upon the district attorney's report the city council discharged appellant because the charges were not true and were made by appellant recklessly, irresponsibly and in bad faith.

The evidence was susceptible of the interpretation that appellant did in fact engage in a course of conduct of soliciting and attempting to compile a dossier of adverse information regarding the chief with respect to his official and personal life and discussing same with fellow police department employees. He stated in the letter to Senator Zenovich "In checking and inquiring, I found . . . ." Further, he admitted keeping detailed written notes on adverse information regarding the chief. Officer Nabors testified that appellant came by his residence and advised him that he had something on the chief, that he was out to get him, and that he was compiling a letter to Senator Zenovich. Officer Joe White, with whom appellant served on patrol, testified that appellant was critical of the chief, that he said he was going to "take his lordship" away from the chief, and that he had sent a letter to Senator Zenovich. Officer White denied ever having made statements attributed to him in the letter to the senator. In his letter to the senator appellant ascribed information to the following third parties: James Daugherty, Sergeant Valenzuela, Officer Nabors, Sergeant White, Sheriff's Deputy Sharp, Officer Barber, Jim Grice, and a city hall clerk, Jen Grutzmarker. The personnel commission authorized testimony that would tend to confirm or impeach appellant's truthfulness in ascribing the information to the specific third parties as being relevant to appellant's statement of the issue whether his acts regarding the letter were reckless or irresponsible and whether he acted in good faith. Nevertheless, appellant offered no substantial confirming evidence regarding any of his alleged third party sources.

Appellant testified that he did not obtain any of the information by soliciting others. The trier of fact could have concluded that his testimony in this regard was false and that his testimony on other matters was suspect.

Appellant places heavy reliance upon his request to the representatives of the news media that they keep the contents of the letter

confidential as being indicative of his good faith and public-spirited motive to ferret out misconduct. He argues that in fact those representatives did not publicize the letter until the chief received it from the district attorney and it became public knowledge, and that therefore the publicity did not result from giving the letter to the newsmen but from the acts of the district attorney and the chief. He concludes that this series of events conclusively demonstrates that appellant's actions were not a deliberate attempt to publicly disseminate the criticism or charges. However, while such a conclusion would be a reasonable one for the trier of fact to reach, it is not compelled. In this regard, it is to be recalled that appellant expected the newsmen to investigate the matter. It is, of course, their premiere function to seek out and report news. The newsmen do not have to disclose their source. (Evid. Code, § 1070.) The information contained in the letter is the type of tidbit that makes good newsprint and would be difficult at best to permanently repress whether or not the letter had been released through other sources. Thus, the fact that the letter was not in fact released by the newsmen does not mean that the appellant could have reasonably relied upon the secrecy of its contents being preserved.

Moreover, in assessing the inferences that may be drawn from the evidence, it should be kept in mind that appellant told Officer White that "he had been on friendly terms and in contact with a reporter from KMJ TV by the name of Julio Calderon and he told me, quote, if you ever want to stir up any sh— in Selma contact Julio Calderon. He's got a way to go, he is not afraid to take on the City of Selma or Chief Brockett unquote." We believe under these circumstances the trier of fact could draw a reasonable inference that in giving copies of the letter to Calderon and to the Fresno Bee appellant expected to set up a situation that would have harmful repercussions on the police department and one way or the other inevitably result in the publication of the letter in the media.

Finally, there was introduced in evidence a letter dated March 13, 1975, signed by 13 members of the small Selma Police Department, urging that appellant not be allowed to return to the police department. The letter stated in pertinent part: "We feel that Mr. Unruh would continue to be a constant source of internal dissension. His return to duty would create an intolerable situation in that we cannot and do not want to work with him. His presence here would definitely be detrimental to department morale and adverse to amiable working conditions." It is reasonable to draw an inference from this communication that the

conduct of appellant resulted in an actual impairment of the working relationship between appellant and his associates and between appellant and the head of the department, and that his presence in the department seriously affected the morale, discipline and functioning of the Police Department of Selma.

██ Based on all of the foregoing, we conclude that the findings essential to support a violation of Government Code section 19572 and the departmental regulations set forth are amply supported by the evidence, and that appellant's dismissal did not violate any constitutional or other policy proscriptions.[6]

The judgment is affirmed.

Hopper, J., and Tuttle, J.,* concurred.

---

[6]We restrict the holding herein to the narrow facts of this case. A complaint of misfeasance, malfeasance, misconduct in office or concerning major irregularities in the conduct of a public office which is not made recklessly, irresponsibly and without a good faith belief in the validity of the charges and which is made in confidence to a proper investigative agency (or to the complaining person's political representative) would be entitled to constitutional protections. The ultimate benefits to the public weal, to the efficiency, honesty and integrity of the governmental agency involved—even though the complaint should inadvertently become public knowledge—far outweigh any detriment to the public service involved due to disputation, disharmony, unpleasantness or impairment of relationship between the head of the agency and the complaining employee. It follows that any regulation which purports to proscribe an employee's freedom to report such a complaint in confidence to a proper investigative agency or to his political representative by requiring that such a complaint be reported to a fellow employee or agency head or to any commission or political body is, to the extent it conflicts with such constitutional protections, invalid.

*Assigned by the Chairperson of the Judicial Council.

## APPENDIX 1

Finding of fact 3 recites that the personnel commission found that appellant's conduct constituted a violation of Government Code section 19572 as being behavior incompatible with and inimical to the public service and in violation of the following general orders of the police department:

"6-4. 'If you have a grievance, do not talk about your troubles with other Officers. Go directly to the Commanding Officer of your shift and take the matter up with him. You will always get consideration. When you have a grievance on your mind unload it at once. The longer you think of your trouble the larger it appears, and the more you help to cause a feeling of unrest in the Department, which results in causing a demoralizing effect among the Officers you come in contact with.

"6-14. 'Every Patrolman shall hold himself in readiness at all times to answer the calls and obey the orders of his Superior Officer. He shall treat his Superiors with respect and his demeanor to his associates in the force shall be courteous and considerate, guarding himself against envy, jealousy or any unfriendly feeling, and refrain from any communication to their discredit, except to his Superior Officers, whom it is his duty to inform of any neglect or disobedience of orders on their part that may come to his knowledge. He shall conform to the rules and regulations of the Department, observe the laws and ordinances, and render his service to the City with zeal, discretion and fidelity.

[Paragraphs 17, 18, 25 and 26 are under General Order No. 7, entitled "Discipline," and prohibit the conduct referred to.]

"17. 'Insubordination or disrespect toward any Superior Officer.

"18. 'Neglect to treat Officer and members of Department and all other persons courteously and respectfully at all times.

"25. 'Gossiping about a member of the Department concerning his personal character or conduct, to the detriment of any such member.

"26. 'Publicly criticizing the official action of a Superior Officer.' " (In its conclusions of law the court stated that "Application of the department rules and the California Government Code Section set forth in the findings of respondent's Personnel Commission to the petitioner's course of conduct was justified.")

Further pertinent findings are:

"4. Over a period of several months prior to his writing and dissemination of the May 18, 1974 letter, petitioner engaged in a course of conduct of soliciting and attempting to compile a dossier of adverse information regarding the Police Chief with respect to his official and personal life, discussing same with fellow Police Department employees.

". . . . . . . . . . . . . . .

"6. Petitioner wrote and signed the said letter on behalf of the Selma Police Officers Association without having been so authorized by the other officers or membership of that organization to do so, and directed it to the Senator's offices.

". . . . . . . . . . . . . . .

"10. The charges made and disseminated by the petitioner with the said letter reflected a reckless disregard by petitioner as a trained and experienced peace officer as to whether or not they were true.

"11. At no time prior to this dissemination of the said letter to the Senator's office and the news media did petitioner consult an attorney in a position to advise him concerning the matter, nor did petitioner contact respondent's Police Chief or other ranking departmental management, City Attorney, Personnel Commission, City Council, the District Attorney, Grand Jury or the Attorney General's office regarding the charges or any of them contained in the said letter.

"12. The political and news media channels used by petitioner were improper, and petitioner knew or was chargeable with knowledge that the proper and legally proscribed [sic] channels for the charges relating to unsatisfactory working conditions were departmental and/or City officials—ranking departmental officials, the Personnel Commission, the City Council—and for those charges relating to alleged violations of

criminal and other law were City agencies (City Attorney, City Council) or County agencies (District Attorney, Grand Jury) or the State Attorney General.

"13. Petitioner's conduct evidenced animosity, disloyalty, disrespect and hostility to the Police Chief.

"14. Petitioner's charges against the Police Chief and the second ranking official of the Police Department, his questioning of and statements to departmental employees, and the subsequent wide, continuing and extensive dissemination constituted a rebellious challenge by petitioner to the authority of his superior officers, irreparably impaired the relationship between him and respondent's Police Department and its chief officers, was destructive of the confidence, morale, loyalty and discipline that is essential to the proper functioning of a law enforcement agency, and compromised the integrity, harmony and efficiency of respondent City's Police Department."