[Civ. No. 33128. Fourth Dist., Div. Two. Jan. 16, 1985.]

MARTIN SCHMITT, Plaintiff and Respondent, v.
CITY OF RIALTO et al., Defendants and Appellants.

COUNSEL

Robert G. Koch, Jr., City Attorney, Cotkin, Collins, Kolts & Franscell, Glenda Sue Bourdon, George J. Franscell and Jeffrey M. Epstein for Defendants and Appellants.

Silver, Kreisler, Goldwasser & Shaeffer, Stephen H. Silver and Cynthia Saffir for Plaintiff and Respondent.

OPINION

KAUFMAN, J.—Plaintiff Martin Schmitt was discharged as a police officer of the City of Rialto. He sought a writ of mandate (Code Civ. Proc., § 1094.5) to have his discharge set aside. The superior court granted the .writ, and the city[1] appeals. We reverse.

### BACKGROUND FACTS

The administrative proceedings leading up to plaintiff's discharge relate to two alleged incidents of misconduct.

The first charge against plaintiff was that he had knowledge of and was a principal in the crime of child endangerment (Pen. Code, § 273a). School officials called the San Bernardino County Sheriff's Department to investigate a possible charge of child endangerment. Detective Daily of the San Bernardino County Sheriff's Department conducted the investigation. The alleged victim was plaintiff's seven-year-old son. Detective Daily examined plaintiff's son and discovered injuries, including belt bruises and welts on various parts of the boy's body. The boy told Detective Daily that the bruises were inflicted by both his mother and his father.

---

[1]The defendants and appellants were and are the city and the city council. For convenience they will be referred to herein collectively as the city.

Detective Daily interviewed plaintiff the following day. Plaintiff admitted giving his son four swats across the buttocks with a leather belt approximately one and one-half inches wide. He also admitted that he might have hit his son a fifth time.

Captain Hull of the San Bernardino County Sheriff's Department informed Captain Westcot of the Rialto Police Department that child endangerment charges were being contemplated against plaintiff. In fact, however, no charges of child endangerment were ever filed against plaintiff.

The second disciplinary charge lodged against plaintiff was that he had discharged his firearm in violation of police department interim general order 77-6, which prohibits removing a firearm from its holster unless there is sufficient justification and which requires an officer to notify his supervisor or the duty watch commander if the officer either accidentally or intentionally discharges his weapon while performing a law enforcement duty.

On April 13, 1981, plaintiff was scheduled to give a presentation on officers' safety and maintenance of equipment before a training session for the reserve officers of the Rialto Police Department. Immediately prior to attending the reserve meeting, plaintiff went to the department locker room and unloaded his service revolver. He placed all the live rounds therefrom into his pocket. He then proceeded to load the revolver with blank rounds which he kept in his locker. These blanks were neither issued nor authorized by the City of Rialto Police Department. They had been given to plaintiff by a person whose name he could not remember approximately two and one-half years earlier. He had not previously shot them from his service revolver and he was not certain whether or not he had previously fired them from any other gun. According to plaintiff's testimony they were similar in appearance to blanks used by the San Bernardino County Sheriff's Department.

Plaintiff proceeded to the reserve meeting and stood by while the other reserve coordinator, Officer Menezes, completed his portion of the training session. Plaintiff then began his portion of the session. After he had talked for only two or three minutes, he unholstered his service revolver, asked Officer Menezes if he had checked his bullet proof vest lately and, when Officer Menezes said he was not wearing one, plaintiff pointed his revolver at Menezes and pulled the trigger, firing one blank round. Afterwards, plaintiff laughed. Plaintiff was in uniform and on duty when the incident occurred. Plaintiff did not inform either the watch commander or his supervisor about the incident. Plaintiff's apparent purpose in firing the blank round was to emphasize the importance of using proper safety equipment.

## PROCEDURAL HISTORY

Plaintiff had been suspended without pay pending investigation of the alleged child endangerment incident. While so suspended plaintiff received a notice of proposed disciplinary action from the acting chief of police, recommending plaintiff's termination from the police department. The proposed termination action was based on charges: "a. That you [plaintiff] had knowledge of and were a principal in the crime of PC 273a (1), Child Endangering. [¶] b. That you discharged your firearm in violation of Police Department Interim General Order 77-6."

A hearing on the proposed disciplinary action was held in the office of the chief of police. After the hearing, the chief of police recommended that plaintiff should be terminated from his employment.

Plaintiff then sought and received a full evidentiary hearing before the Personnel Advisory Board of the City of Rialto. As to the child-endangerment charge, the board found that "The police department used the child endangering as a cause for termination when the police department knew that the District Attorney had refused to file charges." As to that charge, the board recommended that plaintiff should have been placed on leave with pay pending the outcome of the investigation into the charge of child endangerment. As to the second charge, that plaintiff had discharged his firearm in violation of interim general order 77-6, the board found the termination to be excessive punishment, and recommended a 30-calendar day suspension without pay. The board certified its findings and recommendations to the city council and the city administrator. Upon review, the city council made a finding with respect to the child endangerment charge that plaintiff was placed in a diversion program in lieu of prosecution, which indicated that the district attorney had sufficient evidence to prosecute on that charge. With respect to the second charge, relating to the discharge of plaintiff's service revolver, the city council found that plaintiff did discharge his firearm in violation of interim general order 77-6, "and in so doing caused a substantial risk of great danger to life and limb." The city council found that both charges should be upheld, the decision of the personnel advisory board should be revoked, and the termination should be reinstated.

Plaintiff filed a petition for writ of administrative mandate in the Superior Court of San Bernardino County. After a hearing, the trial court issued a peremptory writ of mandate remanding the matter for certain clarifications. The writ commanded: "A. The Personnel Advisory Board of the City of Rialto shall issue specific findings of fact as to (1) whether the City has met its burden of proving by a preponderance of the evidence each of the two charges of misconduct against [plaintiff], (2) whether any resulting finding

that the charge had been so proved demonstrates a lack of fitness by [plaintiff] to perform his duties as a police officer, and, thus, properly forms the basis for the imposition of discipline and (3) what degree of discipline, if any, is recommended with respect to any such finding of misconduct also found to form the proper basis for the imposition of discipline.

"B. If the Rialto City Council thereafter reviews those specific findings of fact and recommended discipline, if any, each of its members participating in that process must read, review and fully consider the entire evidentiary record of the proceedings before the Rialto Personnel Advisory Review Board, including the transcript of the hearing conducted on July 24, 1981 and August 13, 1981 and all exhibits received in evidence at that hearing, prior to (1) rendering any finding of fact which would deviate from that issued by the Personnel Advisory Review Board or (2) imposing any discipline in excess of that recommended by the Personnel Advisory Review Board. Any independent findings of the City Council must address the same issues described above in paragraph A."

Pursuant to the writ of mandate, the board reviewed its proceedings and found that, as to the charge of child endangerment, the City of Rialto did not present sufficient evidence to support the charge. With respect to the second charge, the board found that the City of Rialto did present sufficient evidence to support the charge; that there was a sufficient connection between the offense charged and plaintiff's ability to function as a police officer to warrant the imposition of discipline; and that the appropriate discipline was a 30-day suspension without pay.

The city council, after having reviewed and considered the entire record of proceedings before the board, adopted the board's finding with respect to the charge of child endangerment, i.e., that the city did not present sufficient evidence to support the charge. With respect to the second charge, the city council found that there was sufficient evidence to support the allegations plaintiff had discharged his service revolver in violation of interim general order 77-6; that the violation of interim general order 77-6 was sufficiently related to the duties of a police officer to justify taking disciplinary action; and that, by unanimous vote of the members of the city council, plaintiff should be terminated from his employment as a police officer of the City of Rialto.

Plaintiff thereafter filed the instant petition for a writ of administrative mandate. The court found the decision to terminate plaintiff constituted a manifest abuse of discretion and issued a peremptory writ of mandate commanding defendants to reconsider the discipline to be imposed.

The trial court, apparently exercising its independent judgment, found that the city council had considered the child endangerment charge in reaching its final decision as to penalty even though the council found there was an insufficient basis to substantiate the charge; that the city council improperly considered the potential financial liability of the city if plaintiff should be retained as a police officer; that the city council had not accorded proper weight to the fact that plaintiff had never been involved in any other incidents of alleged misuse of a firearm; and, finally, that plaintiff's firing of his weapon using a blank cartridge was a planned and deliberate act on his part with a legitimate purpose, and that even though plaintiff exercised extremely poor judgment, his poor judgment in executing a deliberate act did not reflect upon his ability to perform law enforcement duties under pressure.

It is from the judgment in the second mandate proceeding that the city has appealed.

## Discussion

### I. *Standard of Review*

Plaintiff asserts the trial court properly exercised its independent judgment in reviewing his discharge and that this court must affirm the judgment of the trial court if it is supported by substantial evidence. Plaintiff is partly correct and partly in error. The error is critical, however.

*Review in the Trial Court*

■ The disciplinary proceedings initiated against plaintiff affected a "fundamental vested right" in his city employment. The superior court was therefore required to exercise its independent judgment in its review of the administrative finding that plaintiff was guilty of misconduct. (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 820-825 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].) ■ However, "[t]he penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 217 [124 Cal.Rptr. 14,.539 P.2d 774]; *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. (*Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006].)" (*Barber* v. *State Personnel Bd.* (1976)

18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].) "Decisions prior to *Strumsky* made it clear that the penalty imposed can be disturbed only for a manifest abuse of discretion, and *Strumsky* did not alter this limitation on the trial court's power." (5 Witkin, Cal. Procedure (1983 supp.) Extraordinary Writs, § 222E, p. 365.)

*Review on Appeal*

As to issues upon which the trial court has properly exercised its independent judgment, the appellate court reviews the findings of the trial court to determine whether they are supported by substantial evidence on the whole record. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33]; see *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892], and authorities there cited.) However, as to administrative determinations properly reviewed in the superior court under the substantial evidence standard or an abuse of discretion standard, the scope of review is the same in the appellate court as it was in the superior court, that is, the appellate court reviews the administrative determination, not that of the superior court, by the same standard as was appropriate in the superior court. (See *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 76 [101 Cal.Rptr. 768, 496 P.2d 840]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242]; *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d at pp. 915-916; *Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at pp. 386-387.) ■ Thus, as to the discipline imposed the standard of review on appeal remains the same as it was in the superior court: the administrative agency's exercise of discretion as to the discipline to be imposed will not be disturbed unless a manifest abuse of discretion is shown (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at p. 404). To the extent the decision in *Toyota of Visalia, Inc.* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 326-327 [202 Cal.Rptr. 190], holds or otherwise indicates that upon review of the issue of severity of an administrative penalty the appellate court reviews the determination of the trial court to see whether it is supported by substantial evidence, we disagree with it. The only case cited for that proposition in the *Toyota of Visalia* opinion was *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1135 [95 Cal.Rptr. 566]. (155 Cal.App.3d at p. 326.) However, the *Lacy* decision did not so hold and is not authority for that proposition.

*Lacy* was not a case involving the review of an administrative penalty at all. The plaintiff had been denied unemployment insurance benefits because of an administrative determination that she had been discharged from her last employment for misconduct. The question was whether she was guilty

of misconduct, and that question turned on whether the employer's order she disobeyed was reasonable. (17 Cal.App.3d at pp. 1131-1132.) Thus, the question being reviewed in the appellate court was whether there was substantial evidence to support the trial court's determination that the plaintiff was not guilty of misconduct. Plainly, that was an issue upon which the trial court properly exercised its independent judgment on the evidence, and the substantial evidence rule therefore obtained on appeal as we have explained and as the *Lacy* court held.[2]

Thus, on the issue of the proper scope of review in the appellate court of the propriety of an administrative penalty or sanction, the *Toyota of Visalia* decision is unsupported by the authority it cited and is contrary to the numerous cases we have cited above.

## II. *Propriety of Plaintiff's Discharge*

There is no question that plaintiff removed his revolver from its holster, pointed it at his fellow officer and pulled the trigger. It is also uncontroverted that neither plaintiff nor his fellow officer reported the discharge of plaintiff's weapon to anyone. Even the trial court agreed plaintiff demonstrated extremely poor judgment in selecting this method of making his point.

The trial court's conclusion that the exercise of such poor judgment at a time when plaintiff could calmly deliberate and plan his conduct has no relation to plaintiff's ability to function as a police officer is unsound. The failure to exercise good judgment under circumstances of calm reflection and deliberation raises serious question as to a person's ability to exercise good judgment in stress situations such as a police officer often faces. Further, plaintiff's cavalier attitude toward firing at another officer with ammunition, supposedly blank but previously untested, evidences a disregard for safety and for official regulations entirely inconsistent with the proper attitude of a police officer. The trial court's conclusion there was no relation between the gun-firing incident and plaintiff's ability to function as a police officer was clearly erroneous.

Otherwise, the trial court's finding that the city council abused its discretion in imposing the penalty of termination is based on the court's findings that the city council considered impermissible factors and did not give sufficient consideration to other factors. However, the record does not sub-

---

[2]The *Lacy* court stated in relevant part: "While the superior court exercises its independent judgment on the administrative evidence, California law accords the appellate court a much narrower scope of review, confining it to an inquiry whether the superior court's findings are supported by substantial evidence. [Citation.]" (17 Cal.App.3d at p. 1134.)

stantiate the conclusion that the city council was influenced in its decision to discharge plaintiff by improper consideration of the child endangerment charge. Only two members of the city council were concerned at all with the child endangerment charge, and one of those two members stated that he would consider suspension, but not dismissal, as an appropriate penalty for that charge. The other member of the council concerned with the child endangerment charge was the mayor. So far as the transcript of the proceedings before the city council shows, the mayor did not vote, either as to any of the findings or as to the discipline to be imposed. There is no evidence whatsoever that the other three members of the council, whose votes alone would have been sufficient to impose the penalty, gave any consideration at all to the child endangerment charge. Moreover, in attempting to ascertain the council's reasons for its determination it is improper to disregard its findings and resort to the statements of its individual members, at least in the absence of evidence of oppression or discrimination. (Cf. *Ex parte Goodrich* (1911) 160 Cal. 410, 417 [117 P. 451]; also cf. *Boie-Hansen* v. *Sisters of Charity* (1957) 152 Cal.App.2d 845, 848 [314 P.2d 189].)

The city council did not act improperly in considering the potential legal liability of the city for plaintiff's acts or for plaintiff's possible future acts as a city police officer. In determining whether a penalty imposed on a government employee is appropriate, the overriding consideration is the actual or potential harm to the public service. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 218 [124 Cal.Rptr. 14, 539 P.2d 774].) It was certainly appropriate for the city council to consider the potential legal liability of the city in assessing the actual or potential harm to the public service that might result from the future conduct of plaintiff if based on the same bad judgment as plaintiff demonstrated here.

Other relevant factors in determining the discipline to be imposed for misconduct are the circumstances surrounding the misconduct and the likelihood of its recurrence. (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d 194, 218; *Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 744 [164 Cal.Rptr. 557].) The nature of plaintiff's employment as a police officer and the nature of his offense were also valid considerations for the city council in making its judgment as to the discipline to be imposed. (See *Hooks* v. *State Personnel Bd.* (1980) 111 Cal.App.3d 572 [168 Cal.Rptr. 822]; see also *Unruh* v. *City Council* (1978) 78 Cal.App.3d 18, 25 [143 Cal.Rptr. 870]; *Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 312 [141 Cal.Rptr. 354]; *Norton* v. *City of Santa Ana* (1971) 15 Cal.App.3d 419, 426 [93 Cal.Rptr. 37].)

The city council was fully cognizant of the circumstances surrounding plaintiff's misconduct, including the fact that plaintiff had time to deliberate

and plan his course of action. Although there is no evidence the specific act of firing a blank round at a fellow officer in a training session would recur, there is no way of telling when plaintiff might experience another lapse of judgment or when his cavalier attitude toward danger and official regulations, evidenced by his conduct in this case, might manifest itself in some other conduct posing a serious danger to the public or police personnel.

If reasonable minds may differ as to the propriety of the discipline imposed, the administrative decision may not be regarded as an abuse of discretion. (*Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904, 922 [145 Cal.Rptr. 396]; see also *Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 287, 294 [341 P.2d 296].) Clearly, this is a case in which reasonable minds may differ as to the appropriate discipline to be imposed. Plaintiff's misconduct might reasonably be viewed by some as relatively innocuous; however, it could also reasonably be viewed, as it was by the city council, as demonstrating a severe lack of good judgment and an indifference to safety and official regulations portending serious future consequences. The city council has the responsibility; their view of the matter must be respected.

Because reasonable minds could differ as to the propriety of termination as the discipline to be imposed, the city council may not be said to have manifestly abused its discretion in terminating plaintiff.

### DISPOSITION

Accordingly, the judgment granting the petition for a writ of administrative mandamus is reversed, and the writ is ordered recalled.

Morris, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied February 8, 1985, and respondent's petition for a hearing by the Supreme Court was denied March 21, 1985.