[No. B208525. Second Dist., Div. Seven. Sept. 2, 2009.]

CESAR WENCES, Petitioner and Appellant, v.
CITY OF LOS ANGELES et al., Respondents.

**COUNSEL**

Gary Orville Ingemunson for Petitioner and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gregory P. Orland, Deputy City Attorney, for Respondents.

**OPINION**

**ZELON, J.**—Appellant Cesar Wences (Wences) appeals from the trial court's denial of his petition for writ of administrative mandate brought pursuant to Code of Civil Procedure section 1094.5. Wences, a police officer, received an official reprimand from the Los Angeles Police Department (the Department) for using unauthorized tactics and inappropriately drawing his weapon during the course of an off-duty, officer-involved shooting. After his administrative appeal was denied, Wences filed a mandate petition in Los Angeles County Superior Court, seeking an order compelling respondents City of Los Angeles and Chief of Police William J. Bratton (collectively Respondents) to set aside the official reprimand and the sustained charges of misconduct against him. The trial court denied the petition on the grounds that there was substantial evidence to support the administrative decision. We conclude, however, that because the disciplinary proceedings against Wences substantially affected his fundamental vested right in his employment, the trial court was required to exercise its independent judgment on the evidence. We therefore reverse and remand the matter to the trial court for reconsideration under the proper standard of review.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. *The Off-duty, Officer-involved Shooting*

At the time of the relevant events, Wences had been employed by the Department for five years and held the rank of police officer II. On April 3,

2005, at approximately 8:00 p.m., Wences was off duty and at home in the City of Long Beach. Over the course of several minutes, a woman later identified as Edie Rodriguez (Rodriguez) repeatedly called Wences's residence to speak with a relative who lived with Wences and his family. Both Wences and his wife informed Rodriguez that the relative was not at home. Rodriguez continued to call, however, and became increasingly hostile over the telephone. During the last call, Rodriguez told Wences's wife, "You don't know who you're fucking with. I know where you live. I'm going to get my homeboys and homegirls to go fuck you up." Although his wife was afraid, Wences did not consider Rodriguez's threat to be credible at the time and considered her repeated telephone calls to be a mere annoyance. Wences told his wife not to worry and continued watching television.

Approximately 45 minutes later, Wences's wife informed him that there were four individuals outside throwing "stuff" at his truck. At that point, Wences believed that Rodriguez was one of the persons outside his home and was there to pursue her threat. Fearing for his and his family's safety, Wences immediately went to his equipment bag and removed his personal firearm from its holster. He also instructed his wife to call the Long Beach Police Department and to make sure to advise them that he was an off-duty officer. Wearing civilian clothing, Wences opened the front door of his home and went outside onto his front porch. He did not look out any windows to assess the situation before arming himself or stepping outside.

When Wences walked onto his front porch, he immediately was illuminated by a motion sensor light. Once outside, he observed four individuals standing across the street approximately 90 feet away, but he did not have a full view because their bodies were partially obscured by his truck. The group began walking toward Wences in a threatening manner. Wences decided to leave his porch and walk toward the group because he wanted to place some distance between the suspects and his home and to better assess what they were doing behind his truck. As he approached, Wences held his firearm at his side in a "low ready" position, pointed downward at a 45-degree angle. Without identifying himself as a police officer, Wences ordered the group to "get back." The group was startled upon seeing Wences's gun and retreated to the other side of the street.

Unbeknownst to Wences, his wife had followed him outside. When Wences realized that his wife was standing adjacent to him, he instructed her to return to the house, and again, to call the police. In response, Rodriguez, who was one of the group members, said words to the effect, "What do you mean call

the police? You're the one holding the fucking gun . . . I'll get people from the Mexican Mafia." Wences's wife briefly went inside and instructed her 13-year-old nephew to call the police. She then rejoined Wences, who remained standing in the middle of the street with his firearm in the "low ready" position.

After Wences's wife returned, the situation escalated. Rodriguez began advancing on the wife, calling her a "bitch" and grabbing her by the shirt. Wences was able to push Rodriguez back with his hand and she retreated behind the rest of the group. Rodriguez then returned with a shiny silver object in her hand, which Wences thought was a knife, but later learned was a fork. Rodriguez again advanced on Wences and his wife and thrust the object toward them in a stabbing motion. At that point, Wences believed that both he and his wife were in danger and feared for their lives. Wences fired a single warning shot into the grass to the right of Rodriguez. As soon as Wences fired the shot, Rodriguez fled.

Wences then turned his attention to the remaining suspects and detained them while waiting for the police to arrive. The Long Beach Police Department arrived shortly after receiving a "911" call from Wences's nephew and took the three suspects into custody without incident. Rodriguez later was arrested and convicted of making terrorist threats. Wences was never treated as a suspect in the Long Beach Police Department's criminal investigation, but rather as a crime victim.

II. *The Department's Disciplinary Proceedings*

Following this off-duty, officer-involved shooting, the Department convened a mandatory "Use of Force Review Board" to review Wences's tactics, drawing and exhibiting of his firearm, and use of force during the incident. Pursuant to Department policy, the five-member Use of Force Review Board was responsible for making a finding of "in policy" or "out of policy" as to the drawing of the firearm and the use of force, and for making a recommendation to the chief of police of "no action," "training," or "administrative disapproval."

Wences's commanding officer, Captain Clay Farrell, recommended to the Use of Force Review Board that Wences receive formal training for his tactics and drawing of his weapon and no action for his use of force. However, after conducting an independent review of the incident, the Use of Force Review Board decided not to follow Captain Farrell's recommendations. On February 21, 2006, the Use of Force Review Board found that

Wences's use of force in discharging his firearm was "in policy," but that the drawing and exhibiting of his firearm prior to the shooting was "out of policy." The Use of Force Review Board recommended to Chief Bratton that Wences receive an "administrative disapproval" for both his tactics and his drawing and exhibiting of his firearm.

On March 3, 2006, Chief Bratton issued his own findings and recommendations to the "Board of Police Commissioners." Chief Bratton agreed with the findings of the Use of Force Review Board and recommended to the Board of Police Commissioners that it do the same. On March 28, 2006, the Board of Police Commissioners adopted Chief Bratton's findings and administratively disapproved Wences's tactics and drawing and exhibiting of his weapon.

On March 29, 2006, the Department issued a personnel complaint against Wences. The complaint alleged that Wences utilized unauthorized tactics and inappropriately drew his weapon in connection with the off-duty shooting, which resulted in an "administrative disapproval" from the Board of Police Commissioners. Following the issuance of the personnel complaint, Wences's commanding officers were responsible for making a penalty recommendation to Chief Bratton. The commanding officers recommended that Wences receive an official reprimand. On March 31, 2006, Chief Bratton agreed with the recommended penalty and signed an official reprimand for Wences's use of unauthorized tactics and inappropriate drawing of his weapon.

On April 14, 2006, Wences filed an administrative appeal. The specific relief that Wences sought was for the Department to reclassify the "out of policy" finding to "in policy" and to remove the official reprimand from his record. The administrative appeal was heard over a three-day period in November and December 2006. On January 3, 2007, the hearing officer issued his administrative decision, finding that the charges of unauthorized tactics and inappropriate drawing of a firearm by Wences should be sustained and that the penalty of an official reprimand should be upheld. On January 30, 2007, the office of the chief of police issued an order adopting the findings of the hearing officer and upholding the official reprimand.

III. *Wences's Mandate Petition Before the Trial Court*

On April 27, 2007, Wences filed a petition for writ of administrative mandate in Los Angeles County Superior Court. In his petition, Wences sought an order compelling Respondents to set aside the sustained charges of misconduct against him and the official reprimand. Wences contended that the

administrative findings that he had committed an act of misconduct were not supported by the evidence and that he had not been afforded a proper administrative appeal. Respondents opposed Wences's petition. In their respective papers, the parties appeared to agree that the independent judgment standard of review applied to the trial court's review of the administrative decision.

On March 26, 2008, the trial court called the matter for hearing. At the outset of the hearing, the court indicated that it intended to apply the substantial evidence test in ruling on the merits of the petition because the sole discipline imposed on Wences was a reprimand. Counsel for Wences argued that the independent judgment test should apply because, irrespective of the level of discipline imposed, the Department's action impaired Wences's fundamental right to defend his home and family from a criminal threat. The trial court, however, rejected Wences's "home of the castle [sic] argument" as having "no application to the ability of a police officer's employer to reprimand him."

In its March 26, 2008 minute order, the trial court set forth its reasoning on the standard of review as follows:

"Despite the assumption of both of the parties to the contrary, there is no evidence before the court to support a standard of review which requires this court to use its independent judgment as to the weight of the evidence produced at the administrative hearing. The administrative proceedings did not potentially affect any fundamental right of petitioner. A police officer does not have a fundamental right not to be reprimanded by the law enforcement agency that employs him if it considers that he should have used alternative and less dangerous means of dealing with the situation in order to lessen, rather than escalate, the danger that deadly force would be used.

"A use of force review is a means by which a police department continues to train its police officers. The Department is entitled to deference from the court for the purpose of encouraging it to maximize public safety by continuously monitoring and attempting to improve the judgment and level of performance used by its police officers. The standard by which the court reviews the administrative decision is therefore to determine whether it is supported by substantial evidence contained in the administrative record.

"Wences contends that he cannot be 'punished' for exercising his statutory right to protect his home and family. The contention has no merit. Even if a reprimand is regarded as 'punishment,' the administrative decision does not deprive petitioner of any property or employment right, does not affect him

financially, and therefore does not authorize the court to exercise its independent judgment on the evidence pursuant to section 1094.5(c) of the Code of Civil Procedure."

The trial court thus applied the substantial evidence standard of review, and denied Wences's writ petition on the grounds that there was substantial evidence to support the administrative decision. On June 9, 2008, Wences filed a timely notice of appeal.

## DISCUSSION

Among other arguments raised in his appeal, Wences asserts that the trial court erred in failing to apply the independent judgment standard of review to his petition for writ of administrative mandate. We agree, and accordingly, reverse on those grounds.

■ Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. (Code Civ. Proc., § 1094.5, subd. (c).) If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].) The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. (*Bixby v. Pierno, supra,* at p. 143.) If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence. (*Strumsky v. San Diego County Employees Retirement Assn., supra,* at p. 32; *Bixby v. Pierno, supra,* at p. 144.)

■ Whether an administrative decision substantially affects a fundamental vested right must be determined on a case-by-case basis. (*Bixby v. Pierno, supra,* 4 Cal.3d at p. 144.) A right may be deemed fundamental "on either or both of two bases: (1) the character and quality of its economic aspect; [or] (2) the character and quality of its human aspect." (*Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 [163 Cal.Rptr. 619, 608 P.2d 707].) "The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. [Citation.]" (*Id.* at p. 779,

fn. 5.) "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby v. Pierno, supra*, at p. 144.)

█ It repeatedly has been held that "[d]iscipline imposed on public employees affects their fundamental vested right in employment," and therefore, when a public employee challenges an employer's disciplinary action in a mandamus proceeding, the trial court is required to exercise its independent judgment on the evidence. (*Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1167 [95 Cal.Rptr.3d 415]; see *Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902 [4 Cal.Rptr.3d 325]; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356]; *Boctor v. Los Angeles County Metropolitan Transit Authority* (1996) 48 Cal.App.4th 560, 572–573 [55 Cal.Rptr.2d 861]; *McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129 [8 Cal.Rptr.2d 548]; *Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 500 [210 Cal.Rptr. 788]; *Estes v. City of Grover City* (1978) 82 Cal.App.3d 509, 514–515 [147 Cal.Rptr. 131].) The disciplinary action at issue often is the termination of employment. (See, e.g., *Melkonians v. Los Angeles County Civil Service Com., supra*, at p. 1161 [discharge of deputy sheriff]; *Jackson v. City of Los Angeles, supra*, at p. 902 [discharge of police officer]; *Kazensky v. City of Merced, supra*, at p. 49 [discharge of city mechanics]; *Schmitt v. City of Rialto, supra*, at p. 496 [discharge of police officer].) However, courts also have held without distinction that the independent judgment standard applies to actions involving other forms of discipline. (See, e.g., *Boctor v. Los Angeles County Metropolitan Transit Authority, supra*, at p. 563 [demotion of transit authority employee]; *McMillen v. Civil Service Com., supra*, at pp. 127–128 [12-day suspension of city ambulance driver].) On the other hand, the parties do not cite, nor are we aware of, any case which addresses the precise issue presented here: whether a different standard of judicial review should apply in an administrative mandamus proceeding where the challenged discipline is solely a reprimand as opposed to a more severe penalty.

In deciding that the independent judgment standard of review did not apply to Wences's mandamus action, the trial court reasoned that the official reprimand did not implicate any fundamental vested right held by Wences because the "administrative decision does not deprive [him] of any property or employment right, [and] does not affect him financially." The trial court thus focused its analysis on the amount of harm that actually resulted from the reprimand and found that there was no immediate financial impact on Wences. However, the California Supreme Court has made clear that, in considering whether a right is fundamental for purposes of ascertaining the appropriate standard of review, the focus must not be on the "actual amount of harm or damage in the particular case," but rather on the "nature of the

right" itself. (*Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 751 [129 Cal.Rptr. 289, 548 P.2d 689] (*Dickey*).)

In *Dickey*, for instance, two police officers brought administrative mandamus actions to challenge a retirement board's denial of their applications for full salary disability benefits. (*Dickey, supra,* 16 Cal.3d at pp. 747–748.) The issue before the Supreme Court was whether the administrative decision substantially affected a fundamental vested right so as to require the trial court to review the officers' petitions under the independent judgment standard of review. Focusing on the financial impact of the officers' injuries, the retirement board argued that the right to full salary disability benefits was not fundamental "in the light of the actual disabilities incurred—three weeks disability in [one officer's] case and disability requiring work on light duty in [the other officer's] case—" because all that was at stake was the monetary "difference between full salary disability benefits and regular workers' compensation benefits." (*Id.* at p. 750.) The Supreme Court rejected such argument, reasoning that "the crucial question is not the actual amount of harm or damage in the particular case but the essential character of the right in human terms. Thus, the critical area of focus is the nature of the right . . . ." (*Id.* at p. 751.) The court concluded that the right to full salary disability benefits was "indeed 'fundamental' as it directly affects an employee's ability to continue to support his family while incapable of working due to injury received as a result of his employment." (*Ibid.*) Because the administrative decision implicated the fundamental right to disability benefits, irrespective of the actual benefits to be paid, the trial court was required to exercise its independent judgment on the evidence. (*Ibid.*)

██ In considering whether disciplinary proceedings substantially affect a fundamental right, courts similarly have focused on the essential character of the right rather than the actual amount of economic harm. For example, in *Estes v. City of Grover City, supra,* 82 Cal.App.3d 509, a police officer sought judicial review of an administrative decision that suspended him for three days and reduced his pay grade by two steps based on a finding of misconduct. Recognizing at the outset that the officer had a fundamental vested right in his employment, the Court of Appeal focused its inquiry on "whether the vested and fundamental nature of the right to public employment encompasses the right to employment without substantial open-ended reduction in pay grade." (*Id.* at p. 514.) In examining the nature of such right, the court noted that it could not simply " ' "weigh the economic aspect of it," ' " which in the officer's case was a pay cut of $49 per month, but also had to consider " ' "the effect of it in human terms and the importance of it to the individual in the life situation." ' " (*Id.* at pp. 514–515.) The court reasoned that "[p]ay grade [was] certainly important in 'the life situation' to a modestly compensated public employee," and that the discipline imposed on the officer could adversely impact his future earnings beyond the $49

decrease in monthly pay. (*Id.* at p. 515.) On that basis, the court held that the disciplinary action affected a fundamental vested right, requiring the trial court to apply the independent judgment standard of review. (*Ibid.*; see also *San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1897 [58 Cal.Rptr.2d 571] [administrative decision staying the suspension of a food processor's license on the condition that a monetary penalty be paid implicated a fundamental vested right because, even though "the amount of the penalty that plaintiff was actually required to pay was not extraordinary, the nature of the right itself was crucial to plaintiff's economic viability as a food processor"].)

Accordingly, in determining whether the Department's disciplinary action against Wences substantially affected a fundamental vested right, we must focus on the nature of the right itself. The nature of the right at issue here is Wences's right to employment as a nonprobationary peace officer. As numerous cases have held, that right is both vested and fundamental. (See, e.g., *Melkonians v. Los Angeles County Civil Service Com.*, supra, 174 Cal.App.4th at p. 1167; *Jackson v. City of Los Angeles, supra*, 111 Cal.App.4th at p. 902; *Schmitt v. City of Rialto, supra*, 164 Cal.App.3d at p. 500; *Estes v. City of Grover City, supra*, 82 Cal.App.3d at p. 514.) It is true, as the trial court noted, that the administrative decision did not actually deprive Wences of his employment by discharging him, nor did it have an immediate financial impact by reducing Wences's salary or benefits. However, as the California Supreme Court has cautioned, we must not consider the "economic aspect" of the right alone, but also the "effect of it in human terms." (*Bixby v. Pierno, supra*, 4 Cal.3d at p. 144.) The Department's official reprimand, based on a finding of administrative disapproval by the Board of Police Commissioners, is a part of Wences's employment record as a police officer. The reprimand may be considered by the Department in future personnel and disciplinary decisions, and based on its content, may adversely affect Wences's future opportunities for career advancement. It therefore implicates a right that is important to Wences in his life situation even in the absence of an immediate economic impact.[1]

---

[1] We reject Wences's alternative argument that the fundamental right at issue is the right of an off-duty police officer to protect his or her family and home from a criminal threat. It is well established that a police department is entitled to investigate allegations of misconduct by an off-duty officer and to institute disciplinary proceedings where appropriate. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 571–572 [273 Cal.Rptr. 584, 797 P.2d 608] ["[W]hile the off-duty conduct of employees is generally of no legal consequence to their employers, . . . [t]o maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct; [and] if warranted, it must institute disciplinary proceedings."].) In disciplining Wences for his conduct in the off-duty shooting, the Department did not find that Wences was precluded from taking any action whatsoever to protect his home and family, but rather found that his tactics and drawing of his firearm were not appropriate actions under the circumstances. The

■ The law governing when a police officer has a right to administratively appeal a disciplinary action also is instructive. The Public Safety Officers Procedural Bill of Rights Act (the Bill of Rights Act), codified at Government Code section 3300 et seq., provides "a number of basic rights and protections which must be accorded individual public safety officers by the public agencies which employ them," including "the right to an administrative appeal of punitive actions." (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].) Government Code section 3304, subdivision (b) specifically states that "[n]o punitive action . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." (Gov. Code, § 3304, subd. (b).) Section 3303 of the Government Code in turn defines "punitive action" as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Gov. Code, § 3303.)

■ In considering what forms of discipline constitute "punitive action" under the Bill of Rights Act, courts have held that "punitive action, sufficient to trigger an officer's administrative appellate rights, may exist when action is taken which may lead to the adverse consequences . . . at some *future time*." (*Otto v. Los Angeles Unified School Dist.* (2001) 89 Cal.App.4th 985, 996 [107 Cal.Rptr.2d 664], first italics omitted.) There is no required showing that an adverse consequence "has occurred or is likely to occur." (*Id.* at p. 997.) Instead, it is sufficient if the challenged action " 'may lead' to such consequences in the future. [Citation.]" (*Ibid.*; see also *Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 348 [102 Cal.Rptr.2d 910] [written reprimand criticizing deputy sheriff for inappropriately drawing his firearm was "punitive action" because it would "almost certainly have an impact on his future opportunities for advancement in the sheriff's department"]; *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1222 [85 Cal.Rptr.2d 660] [citizens review board's nondisciplinary finding of misconduct against deputy sheriffs was "punitive action" because it would "be considered in future personnel decisions affecting [the] deputies and may lead to punitive action"]; *Hopson v. City of Los Angeles* (1983) 139 Cal.App.3d 347, 353 [188 Cal.Rptr. 689] [police commission's report that an officer-involved shooting violated department policy was "punitive action" because of "its potential impact on the [officers'] career opportunities"].) Notably, regardless of its actual impact, a written reprimand is considered to be per se punitive in nature under the Bill of Rights Act, thus giving rise to the right to an administrative appeal. (*White v. County of Sacramento, supra,* 31 Cal.3d at p. 683; *Gordon v. Horsley, supra,* at p. 347.)

---

discipline imposed on Wences thus did not implicate his right to defend his home and family as an individual citizen. It did, however, implicate his right to employment as a police officer.

In this case, because the action taken against Wences was a written reprimand, he had an absolute right to administratively appeal the Department's disciplinary decision. Such administrative appellate rights existed even though the reprimand did not have an immediate adverse effect on Wences's job title, salary, or benefits. It still was considered to be a punitive action, triggering the protections of the Bill of Rights Act. Respondents note that, after the issuance of the reprimand, Wences was promoted from a police officer II to a police officer III and that the Department considered Wences's disciplinary history in deciding to promote him. On that basis, Respondents contend that the reprimand could not have damaged Wences's career. However, the fact that Wences was able to obtain one promotion following the reprimand does not mean that his prior discipline will no longer be considered by the Department in its future personnel decisions and will not in any way hinder Wences's future career opportunities. As Respondents concede, the Department generally evaluates a police officer's full employment history, including sustained personnel complaints and prior disciplinary actions, in making promotion and assignment decisions.

■ Under these circumstances, we conclude that the administrative decision sustaining the charges of misconduct against Wences and upholding the official reprimand substantially affected Wences's fundamental vested right in his employment. As a result, the trial court was required to exercise its independent judgment on the evidence. The trial court's error in failing to apply the appropriate standard of review to Wences's mandate petition precludes us from reaching the merits of the appeal. "This is so because on appeal from a judgment in a case where the trial court is required to exercise its independent judgment, our review of the record is limited to a determination whether substantial evidence supports the trial court's conclusions and, in making that determination, we must resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court. [Citations.] It follows that where the trial court has failed to perform its duty, we are unable to perform ours . . . ." (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 659–660 [53 Cal.Rptr.2d 4]; see also *San Benito Foods v. Veneman, supra,* 50 Cal.App.4th at p. 1897 [where trial court "expressly indicated that it was utilizing a 'substantial evidence' standard of review rather than the appropriate 'independent judgment' standard of review, it erred and reversal is required"].) The matter therefore must be remanded to the trial court for reconsideration under the proper standard of review.[2]

---

[2] In light of our disposition, we need not reach Wences's other arguments on appeal. Wences may address those arguments to the trial court on remand as appropriate.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to reconsider Wences's petition for writ of administrative mandate under the independent judgment standard of review. Wences shall recover his costs on appeal.

Woods, Acting P. J., and Jackson, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 2, 2009, S176993.