Filed 1/22/15  Prasad v. Sessions CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ABHIJIT PRASAD,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>GINA SESSIONS, as Director of<br>Department of Social Services, etc.,<br><br>      Defendant and Respondent. | H039167<br>(Santa Clara County<br>Super. Ct. No. CV203380) |

Abhijit Prasad appeals from the trial court's judgment denying his petition for writ of administrative mandamus against the Santa Clara County Department of Social Services (the Department), in which he challenged the Department's determination that the child abuse allegations made against Prasad were substantiated, rather than unfounded.  The trial court upheld the administrative decision, finding it was supported by substantial evidence.

As we will explain, we conclude the trial court applied the wrong standard in reviewing the Department's determination, and accordingly we remand this matter to the trial court to apply the correct standard.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

In 2009, Prasad was in the midst of a contentious separation from his (now ex-) wife Komal Rattan.  The two had separated in 2007 and eventually divorced in June 2010.  Throughout their separation, Prasad and Rattan shared legal custody of their two young daughters and Prasad had visitation rights.

On November 16, 2009, the Department received a report that Prasad had possibly sexually abused his daughters, who were then aged six and four years old. The alleged abuse took place at Prasad's home sometime between September 2008 and July 2009. One of the girls had rashes and yeast infections in her genital area, and both girls told Rattan that Prasad pinched their "private area" and bathed with them. Around this same period of time Rattan observed her daughters kissing each other and laying on top of each other while naked. Rattan also reported that Prasad has a history of committing domestic violence.

The matter was referred to a Department social worker, Nana Chancellor, for investigation. On November 23, 2009, Chancellor met with Rattan and the two girls. While the girls played, Chancellor and Rattan spoke quietly so that they would not overhear. Rattan described past incidents of domestic violence by Prasad, many of which were committed in their daughters' presence. Rattan said the older daughter recently told her that Prasad takes baths with them and pinches them in "their privates." Rattan thinks the older daughter told her this because the girls were supposed to resume visitations with Prasad and they do not want to do so.

Chancellor then met with the older daughter at one end of the room while Rattan and the younger daughter played at the other end. Chancellor reported the older daughter maintained "good eye contact, communicated clearly, and appeared to be answering questions openly." She told Chancellor she understood what it meant to tell the truth and promised to do so. The older daughter said she does not like visiting with Prasad because he hits them in the head with his fist when they get in trouble. She saw him hit their mother in the head and bump her mother's head into the wall. While visiting her father, he makes them take baths and climbs into the bathtub with them. He pinches their bottoms while in the bath, which hurts and makes them cry. The older daughter denied that he pinched their vaginas. However, on more than one occasion, her father told them

2

to touch his privates but they refused because "[i]t's disgusting." He would get mad and kept saying "touch my butt" repeatedly.[1]

Chancellor next met with the younger daughter, who "appeared to understand everything asked of her but at times appeared to have a difficult time providing clear answers to the questions asked." The younger daughter said she was scared of her father, who spanks her with her pants off when she gets in trouble. He is always mad at her mother. At her father's house, he makes her take baths and gets in the bathtub with her, which she does not like. At this point of the interview, the younger daughter walked to the other side of the room and climbed into her mother's arms.

Chancellor began talking to Rattan again who told her she did sometimes see small bruises on the girls' bottoms, but they never said that Prasad had pinched them. In the last year, her younger daughter kept coming home with severe rashes in her vaginal area after visiting with Prasad. The pediatrician found that the girl had a yeast infection and urinary tract infection.

On December 30, 2009, Rattan contacted Chancellor because Prasad was scheduled to pick up their daughters that afternoon. Chancellor called Detective Nathan Cogburn with the Tracy Police Department, who was in charge of the criminal investigation into the allegations against Prasad. Chancellor wanted to discuss contacting Prasad so she could ask him to forego visitation until the next court hearing, scheduled for January 13, 2010. Detective Cogburn agreed that Chancellor could do so, so long as she did not inform Prasad of the specific allegations or advise him he was being investigated by police as well as the Department.

Chancellor spoke with Prasad, who agreed not to seek visitation with his daughters until the next hearing in family court or until he heard otherwise from Chancellor. He

---

[1] According to Chancellor's report, the older daughter said this phrase to her in Hindi, with Rattan providing the translation.

was polite and stressed his desire to cooperate, but also spent more than 30 minutes on the phone telling Chancellor how Rattan was mentally ill and was brainwashing their older daughter.

Prasad sent Chancellor nearly 100 pages of documents prior to the January 13, 2010 family court hearing. These documents included some of Rattan's medical records, multi-page letters from Prasad describing his fitness as a father, his concerns about Rattan's mental stability and propensity to lie, as well as many photos depicting his daughters engaged in various activities such as swim lessons, birthday parties, etc., during their visits with him.

Chancellor testified at the January 13 hearing and repeated what she had been told by Rattan and the two girls during their November 23, 2009 interview. However, because the Tracy Police Department had asked her not to interview Prasad due to the ongoing police investigation, Chancellor found the allegations of abuse to be inconclusive at that time.

Once police are involved in an investigation of child sexual abuse, Chancellor would not ask the children detailed questions about the claims unless law enforcement personnel were present. Detective Cogburn scheduled a multi-disciplinary interview (MDI) with Rattan and the older daughter for February 1, 2010, but Chancellor did not attend that interview. Detective Cogburn subsequently informed Chancellor the older daughter had provided information consistent with what she had told Chancellor and the "forensic interviewer had found her to be reliable." The older daughter told Detective Cogburn her father got "in the bathtub with her and her sister, that he has touched her bottom and vagina, and that he has asked that she touch his privates."

4

Based on this information, Chancellor found the allegation of sexual abuse by Prasad against the older daughter was substantiated.[2] She found the allegation of sexual abuse by Prasad against the younger daughter to be inconclusive. On February 9, 2010, Chancellor advised Prasad that she had reported her findings to the California Department of Justice for inclusion in the Child Abuse Central Index (CACI).[3] She further advised him of his right to an administrative grievance hearing.

Prasad requested an administrative grievance hearing, which was initially scheduled for July 15, 2010. At that hearing, the Department sought to introduce a redacted document containing the social worker's findings, but that document had not

---

[2] Pursuant to the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) (the CANRA), an investigation of child abuse may result in a report with one of three possible findings: unfounded, substantiated or inconclusive. An " '[u]nfounded report' means a report that is determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect . . . ." (*Id*., § 11165.12, subd. (a).) A " '[s]ubstantiated report' means a report that is determined by the investigator who conducted the investigation to constitute child abuse or neglect . . . based upon evidence that makes it more likely than not that child abuse or neglect . . . occurred." (*Id*., subd. (b).) An " '[i]nconclusive report' means a report that is determined by the investigator who conducted the investigation not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (*Id*., subd. (c).) According to the version of the CANRA in effect during the relevant time period, a county welfare department was required by statute to report all inconclusive and all substantiated findings of child abuse to the Child Abuse Central Index (CACI) maintained by California's Department of Justice (DOJ). (Former Pen. Code, § 11169.) Effective Jan. 1, 2012, the statute was amended so that only substantiated findings are required to be reported. (Pen. Code, § 11169, subd. (a), adopted by Stats. 2011, ch. 468.)

[3] The CACI consists of an index of all reports of child abuse and severe neglect submitted to the DOJ pursuant to the CANRA under Penal Code section 11169. (*Id*., § 11170, subd. (a).) In maintaining the CACI, the DOJ acts as a repository of the reports (*ibid*.), and the CANRA contains specific provisions setting forth the limited categories of persons who have access to the CACI. (*Id*., § 11170, subds. (b)-(e).)

been timely provided to Prasad. The hearing was continued so Prasad could review the document in detail.

At the August 10, 2010 hearing, a grievance officer considered the documentary evidence submitted by the parties as well as the testimony of Chancellor and Prasad. Chancellor testified first, and essentially recounted what she was told during her interviews with Rattan and the two daughters. She also testified that on February 2, 2010, she received a call from Detective Cogburn who told her the older daughter's MDI was consistent with the allegations she made to Chancellor. Detective Cogburn directed her not to discuss the allegations with Prasad.

Prasad testified the abuse allegations were false and he believed Chancellor did not undertake a proper investigation. Chancellor could not tell him when the alleged abuse occurred and he denied ever bathing with his daughters. He complained that he had not seen his daughters since July 2009 and Rattan would often not let him know where the children were. He said his children went to the doctor and there was no evidence that they had been molested. Prasad also said Rattan previously falsely accused him of engaging in domestic violence and he believes she has coached the daughters to make false allegations of abuse against him. He said he has not been arrested and no criminal charges were filed against him arising out of the alleged molestations.

The exhibits that Prasad submitted at the hearing consisted, in part, of copies of various filings in the family court proceedings, various police reports, e-mails, documents related to the nannies he employed to help care for his daughters and multiple photographs of his daughters engaging in various activities, such as swim lessons and watching fireworks, during their visits with him.

On August 23, 2010, the grievance officer issued a written recommendation and summary of findings in which he recommended that Chancellor's original findings, i.e., that the claims of molestation were substantiated as to the older daughter and inconclusive as to the younger daughter, remain unchanged. The grievance officer's

recommendation extensively reviewed the relevant evidence, summarized the testimony provided and concluded that the "statements of [Chancellor] and the information in the case regarding the MDI interview of [the older daughter] substantiate the allegation of sexual abuse." As to the younger daughter, the grievance officer concluded "[t]he allegation of sexual abuse . . . is less clear and there was no supporting MDI regarding her statements. Therefore I am recommending that this allegation continue to be classified as inconclusive." The grievance officer's recommendation was confirmed by the agency director on August 25, 2010.

Prasad subsequently filed a petition for writ of mandate against the Department seeking review and reversal of the Department's decision. Specifically, he sought an order directing the Department to "abate the recommendation finding to 'Unfounded,' dismiss the underlying proceeding results and so advise Respondent State of its action."

Prasad filed a memorandum of points and authorities in support of his petition, in which he argued, in pertinent part: (1) the trial court must conduct an independent review of the evidence admitted at the administrative hearing; (2) his due process rights were violated by misrepresentations, confirmatory bias and falsehoods made by Chancellor; (3) he was not adequately apprised of the dates of the alleged molestations; (4) the grievance hearing officer did not permit him to adequately present his case, thus denying his right to a fair hearing; and (5) the determination that the abuse allegations were substantiated was not supported by the evidence.

In opposition, the Department argued that the administrative decision does not substantially affect a fundamental vested right and thus the trial court should review the decision only to determine if it is supported by substantial evidence rather than conduct an independent review of the evidence. The Department further argued that Prasad's due process rights were not violated, the grievance hearing officer did not prevent him from presenting his case, and there was substantial evidence to support the administrative decision.

At the hearing on Prasad's petition, there was no discussion about the appropriate standard of review.  The trial court's subsequent order denied the petition, rejecting Prasad's due process arguments and concluding "the Department's finding is supported by substantial evidence."

Prasad timely appealed.

## II.    DISCUSSION

Before addressing the substance of Prasad's appeal, we dispose of two motions he filed in this court as the appeal was pending.

### A.    *Motion to augment record on appeal*

Prasad submitted a motion to augment the record on appeal to "include all documents in this case that was [*sic*] not included in the Clerk's Transcript."  Prasad attempted to file these same documents, set forth in four bound volumes with a total of 788 pages, in connection with his writ of mandate in the superior court, but they were rejected by the clerk.  He claims that this court needs these documents to address his argument that the superior court could not have conducted an independent review of the grievance officer's decision in the absence of the documents in question.  He further claims that these documents must be added to the record because the "Administrative Record filed by the County of Santa Clara is not included in the Clerk's Transcript on Appeal."

Prasad is correct that the administrative record is not included in the clerk's transcript.  However, that does not mean that the administrative record is not part of the record on appeal.  It is.  A copy of the administrative record was lodged in the superior court on September 26, 2011, and as required by California Rules of Court, rule 8.123(c), the record was transmitted to this court.  We reviewed all of the documents in that record in connection with the instant appeal, and we presume they were also reviewed below.

We compared the documents submitted by Prasad in his motion to augment to those contained in the administrative record and determined that 13 of the 60 documents

8

he submitted do not appear in the record. Some of these documents are not in the administrative record because they postdate Prasad's August 10, 2010 grievance review hearing, such as exhibits K1 and Z1, which consist of October 2010 letters between Prasad's counsel and the Department regarding the decision of the grievance hearing officer. Other documents which predate the grievance review hearing are not obviously relevant to that hearing. Prasad does not explain in his motion to augment why they are important, let alone that he sought to introduce them at that hearing only to have them rejected by the hearing officer.

A document can be augmented to the appellate record only if the item was filed or lodged in the superior court in the case on appeal. (Cal. Rules of Court, rule 8.155(a)(1).) "Augmentation does not function to supplement the record with materials not before the trial court." (*Vons Companies*, *Inc*. *v*. *Seabest Foods*, *Inc*. (1996) 14 Cal.4th 434, 444, fn. 3.)

Accordingly, we deny the motion to augment the record.

*B.* *Motion for judicial notice*

Prasad has also filed a motion asking that this court take judicial notice of a July 31, 2013 order denying a motion for summary judgment in a case before the United States District Court for the Central District of California.[4] According to Prasad, the federal district court's order is "directly on point" and this court must take judicial notice of it in order to avoid a "conflict" between federal and state courts on the subject of an individual's due process rights to challenge his or her inclusion in CACI or the child welfare system/case management system.

"Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies*, *Inc*. *v*. *Seabest Foods*, *Inc*., *supra*, 14 Cal.4th at p.

---

[4] The case is entitled *Castillo v. County of Los Angeles* (C.D.Cal. 2013) 959 F.Supp.2d 1255.

9

444, fn. 3.) "While we may take judicial notice of the *existence* of judicial opinions, court documents, and verdicts reached, we cannot take judicial notice of the truth of hearsay statements in other decisions or court files [citation], or of the truth of factual findings made in another action." (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.) Judicial notice should be taken only of relevant matters. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1; *Aquila*, *Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.)

We acknowledge Prasad could not have proffered a federal district court order from July 2013 to the trial court in connection with the November 2012 hearing on his petition for writ of administrative mandate. Even if the federal order had been issued sometime before Prasad's hearing, however, the trial court would have declined to take judicial notice of it. Prasad's request is not limited to the existence of the document, but improperly seeks judicial notice of the truth of the factual findings contained therein. The trial court could not have taken judicial notice of those findings, nor can we. (*Johnson & Johnson v. Superior Court*, *supra*, 192 Cal.App.4th at p. 768.) Accordingly, we deny the request.

> C.      *The trial court was required to exercise its independent judgment*

Prasad argues the trial court should have exercised its independent judgment in reviewing the Department's ruling rather than applying the substantial evidence standard of review. At oral argument, the Department conceded the wrong standard of review was applied below and that the case should be remanded.[5] We agree.

---

[5] At argument, the Department prefaced this concession by reiterating the position it took in its responding brief; i.e., that the trial court would reach the same conclusion regardless of what standard of review applied. The Department did not renew the request made in its brief to have this court conduct an independent review of the administrative proceedings and we deem that argument to have been abandoned.

"Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency.  A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved.  [Citation.]  If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence.  [Citations.]  The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings.  [Citation.]  If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence."  (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313.)

"The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review."  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144.)  The court in *Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 928 concluded that "the familial and informational privacy rights identified in *Burt* [*v. County of Orange* (2004) 120 Cal.App.4th 273] are sufficient to establish that there is substantial impact on fundamental vested rights when . . . a parent is listed on the CACI."  (See also *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 84 ["Because recordation in CACI as a probable child abuser impinges upon fundamental rights, the superior court must exercise its independent judgment in determining whether the evidence before the Department established that the report is 'substantiated.' "])

Accordingly, the trial court was obliged to apply an independent judgment standard of review to Prasad's challenge to the Department's findings regarding the claims of sexual abuse.  Because the trial court improperly applied a substantial evidence

11

standard of review, we will remand this matter for the trial court to apply the correct standard of review.

## III.    DISPOSITION

The judgment is reversed, and this action is remanded for a new hearing on Prasad's petition for writ of administrative mandate in which the trial court shall exercise its independent judgment on the evidence.  Prasad is entitled to his costs on appeal.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.