Filed 11/25/15  Krause v. City of Westminster CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PETER KRAUSE, | |
| Plaintiff and Appellant, | G050513 |
| v. | (Super. Ct. No. 30-2013-00646815) |
| CITY OF WESTMINSTER, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

Law Offices of Robin L. Sergi and Robin L. Sergi for Plaintiff and Appellant.

Jones & Mayer, James Touchstone and Denise Rocawich for Defendant and Respondent.

\*          \*          \*

The City of Westminster (the City) fired Police Officer Peter Krause after an internal affairs investigation revealed he had violated portions of the Westminster Police Department's policy manual (the manual) for his participation in an off-duty brawl in a restaurant parking lot. The trial court denied Krause's petition for a writ of mandate (the petition). Substantial evidence supported the court's findings and decision, and Krause failed to show his right to due process was violated. Accordingly, we affirm the order denying the petition and the judgment thereon.

FACTS

Consistent with the applicable substantial evidence standard of review, we recount the facts in the record in the light most favorable to the judgment.

Krause was employed by the City as a police officer. After a night out celebrating his birthday, during the early morning hours of July 17, 2009, Krause was part of a group of 15 to 20 people in a Denny's restaurant. Krause was intoxicated, having had several alcoholic drinks at a bar before arriving at the restaurant.

Around 2:30 a.m. to 3:00 a.m., while Krause's group was sitting inside the restaurant, a group that included four women, Caylee Hill, Lisa Alexander, Michelle Ayache, and Belinda Avila, and two men, Brian Balga and Travis Lilley (collectively, the Hill group) walked into the restaurant. Hill, Alexander, Ayache, and Balga worked together. Members of Krause's group whistled and made flirtatious comments directed to the women in the Hill group and particularly to Hill. She was asked whether Balga was her boyfriend. Krause told Hill, "[o]h ma'am, I'm cuter than this guy." Members of Krause's group made comments to the women in the Hill group to the effect that they "should come party with them" and "hang out with real men."

The Hill group and eight members of Krause's group, which included Krause, left the restaurant about the same time; six other members of Krause's group

2

remained inside. While Krause exchanged phone numbers with Alexander and was talking to her and Ayache in the parking lot, other members of Krause's group insulted Balga as he and Hill stood by his car. They called Balga "a faggot and all of these names" and told Hill that she and the other women in the Hill group "should party with them, and come hang out with them." Around that time, a group of about five or six of Hill's brother's friends arrived and was seated inside the restaurant.

Balga "finally got to the point that [he] couldn't take it any more" and took off his jacket in a manner which, he explained, was "like in a show of . . . 'Get out of the car and let me kick your ass real quick.'" Balga's gesture was met with eight men of Krause's group, including Krause, getting out of their respective vehicles and moving toward Balga.

Krause, along with the seven others, started surrounding Balga. Krause advanced on Balga in a manner that Balga described as though he were considering "a good way to like get a good punch in." Balga backed up to the restaurant's door, turned, ran inside, and told the servers to call the police because "[t]here are eight guys about to attack me." Balga ran into the kitchen, grabbed a large butcher knife, and waited to defend himself.

In the parking lot, Avila approached Krause, yelling at him; she had her hands "up." Krause grabbed Avila and pushed her, causing her to stumble back several steps. That incident was observed by some of Krause's group who had remained in the restaurant and also by the group of Hill's brother's friends. At least some of each group came pouring out of the restaurant, and "it all just went crazy from there . . . [with] numerous fights going on." After Balga had waited in the kitchen and no one came in after him, he looked outside and saw what he described as a "huge brawl" going on in the parking lot.

One of Hill's brother's friends, James Carpenter, was knocked unconscious. Hill saw a group of four men, including Krause, standing over Carpenter; she saw that the

3

unconscious Carpenter was being forcefully kicked in the head but she could not remember by whom. She saw "blood all around" Carpenter and thought he was dead.

Balga saw Krause standing over the unconscious Carpenter, "just throwing a right hand, a vicious right hand, going straight down like that onto his head." Balga stated, "[Krause] rain[ed] down that one last blow that I got to see, which looked like an absolutely brutal blow." Alexander, who did not testify at the arbitration hearing, told Huntington Beach Police Officer Steve Fong that she saw, inter alia, Krause punch and kick Carpenter when he was on the ground.

During the Westminster Police Department's internal affairs investigation, one of Krause's friends and coworkers, who was there that night, stated that Krause had been "aggressive since he had been drinking." The friend also stated that Krause had told him "he had started punching someone."

The former chief of police, James Mitchell Waller, issued a notice of intent to terminate Krause's employment in a memorandum dated March 8, 2010. The memorandum synopsized the "events and causes and specifications" for the decision to terminate Krause's employment. After holding a "Skelly meeting"[1] with Krause and his representative, a final notice of disciplinary action in the form of employment termination, dated May 4, 2010, was issued.

BACKGROUND

I.

KRAUSE FILES THE PETITION.

In May 2013, Krause filed the petition under Code of Civil Procedure section 1094.5. The petition alleged Krause was employed by the City as a police officer and was a permanent member of the civil service system, who enjoyed a vested and

---

[1] See *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.

4

substantial property right in his employment. In the petition, Krause acknowledged that "Westminster City Council . . . was, pursuant to City Charter and Memorandum of Understanding (MOU) . . . between the City of Westminster and the Westminster Police Officer Association, entrusted with the final decision in disciplinary cases involving city employees in the classified service." Krause further acknowledged the City Council "is required to allow evidentiary hearings before an independent arbitrator whose decision is non-binding" and the "Westminster City Council may adopt or reject such decision and render final decisions of appeals brought by employees of the City contesting disciplinary actions imposed upon them."

The petition alleged Krause had been charged by Chief of Police Waller for violating "Manual sections" dealing with his conduct as a police officer, six of which were set forth in the dismissal letter dated May 4, 2010. The petition further alleged that on those grounds, Krause's employment was terminated by the City manager and Krause timely appealed.

The petition stated that a disciplinary hearing was commenced before an arbitrator who determined at the conclusion of the arbitration proceedings that no cause existed to discipline Krause and recommended that the employment termination decision be overturned. The petition further stated that upon subsequent review by the City Council, the arbitrator's recommendation was rejected. Krause asserted, in the petition, that by upholding the decision to terminate his employment, the City Council prejudicially abused its discretion because it did not proceed in a manner required by law, its findings were not supported by the evidence presented at the hearing, and its findings did not support its decision.

In the petition, Krause requested that the trial court exercise its independent judgment on the evidence and determine that the City Council's findings were not supported by the weight of the evidence. He further requested that the court issue a writ of mandate compelling the City Council and the City to set aside the employment

5

termination decision, to reinstate Krause with full backpay and benefits to which he would otherwise be entitled, and to make the necessary changes, corrections, and deletions in his personnel files to reflect the order of the court.

## II.

### THE TRIAL COURT DENIES THE PETITION AND KRAUSE APPEALS.

The trial court denied the petition. The court's minute order stated in part: "On May 4, 2010, the city served Officer Krause with the Final Notice of Disciplinary Action terminating him from his position as a police officer. The city based the termination on Westminster Police Department Policy § 340.3.2(a) (prohibiting unauthorized or unlawful fighting, threatening, or attempting to inflict bodily injury on another), § 340.3.5(o) (prohibiting criminal, dishonest, infamous or disgraceful conduct adversely affecting the employee/employer relationship, whether on or off duty), and § 340.3.5(aa) (prohibiting any on duty or off duty conduct which any employee knows or reasonably should know is unbecoming a member of the department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the department or its members)."

The minute order also stated: "Mr. Krause appealed and a neutral arbitrator held a hearing in November and December 2011. The arbitrator found there was no evidence to sustain any of the allegations against . . . Mr. Krause. [¶] Per the MOU and Article X Section 5, No. 8 of the City Manual, the findings and recommendations of the arbitrator are advisory and the final decision rests with the City Council. Per Article X Section 5 No. 9 of the City Manual, the City Council met and as memorialized in Resolution 4435, the City Council rejected the advisory opinion of the arbitrator and sustained the termination of Krause. The City Council found that Krause had violated three policy sections as stated in the Final Notice of Termination. [¶] Krause then filed this Petition for Writ of Administrative Mandamus challenging the decision made by the

6

City Council in Resolution 4435." Noting that Krause's and the City's briefing in the trial court agreed that the court's applicable standard of review was the independent judgment review, the court confirmed, in ruling on the petition, that "[t]his court [wa]s to determine whether the weight of the evidence as provided in the Administrative Record supports the Council's findings."

In the minute order, the trial court stated its ruling on the petition, as follows: "After review of the petition, briefs and the entire administrative record, the weight of the evidence supports the City Council's decision. Krause was terminated for violations of WPD Policy Manual § 340.3.2(a), § 340.3.5(o) and § 340.3.5(aa). The City Council found that the evidence showed the petitioner assaulted Balga causing him to run for safety, grabbed Avila shoving her and striking Carpenter while he was on the ground. The City Council considered the entire administrative record in this matter, and sustained the Chief's determination, as does this court. [¶] This court has read the administrative record, considered the evidence presented and conducted an independent judgment review. [¶] This court denies the instant Petition for Writ of Mandamus."

No party requested a statement of decision and the trial court's minute order was not a statement of decision. No party raised objections to the minute order. Judgment denying the petition was entered. Krause appealed.

DISCUSSION

I.

WE REVIEW THE TRIAL COURT'S DENIAL OF THE PETITION TO DETERMINE WHETHER THE COURT'S JUDGMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

"Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. (Code

7

Civ. Proc., § 1094.5, subd. (c).) If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. [Citations.] The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. [Citation.] If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence. [Citations.]" (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313.)

"It repeatedly has been held that '[d]iscipline imposed on public employees affects their fundamental vested right in employment,' and therefore, when a public employee challenges an employer's disciplinary action in a mandamus proceeding, the trial court is required to exercise its independent judgment on the evidence. [Citations.]" (*Wences v. City of Los Angeles*, *supra*, 177 Cal.App.4th at p. 314.)

"In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) "[T]he presumption provides the trial court with a starting point for review—but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Id.* at p. 818.)

When "the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the

trial court's determination is the substantial evidence test." (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 824.)[2]

As no party requested a statement of decision, and none was issued by the trial court, the doctrine of implied findings applies. (*County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 438.)[3] We therefore "review the trial court's express factual findings, and any implied findings, for substantial evidence." (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009.)

## II.

SUBSTANTIAL EVIDENCE SUPPORTED THE TRIAL COURT'S FINDINGS.

Krause contends insufficient evidence supported the charges against him. The trial court found that Krause's employment was properly terminated because he violated the following policy sections of the manual: (1) section 340.3.2(a) which prohibits "[u]nauthorized or unlawful fighting, threatening, or attempting to inflict bodily injury on another"; (2) section 340.3.5(o) which prohibits "[c]riminal, dishonest, infamous or disgraceful conduct adversely affecting the employee/employer relationship, whether on or off duty"; and (3) section 340.3.5(aa) which prohibits "[a]ny other on duty or off duty conduct which any employee knows or reasonably should know is

---

[2] The appellate court reviews de novo whether an agency's decision to impose a particular penalty constituted an abuse of discretion. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627.) Krause does not argue that the decision to terminate his employment, based on the findings, constituted an abuse of discretion.

[3] "Without a statement of decision, and timely objections to any ambiguities or omissions in it, the doctrine of implied findings applies." (*County of Orange v. Barratt American, Inc.*, *supra*, 150 Cal.App.4th at p. 438.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively providing error. [Citations.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

unbecoming a member of the department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the department or its members." (Italics omitted.) These policy violations were based on substantial evidence that Krause (1) assaulted Balga, which caused him to run for safety and notify authorities, (2) grabbed and pushed Avila, and (3) struck Carpenter while he was on the ground.[4]

A.

*Substantial Evidence Showed Krause Assaulted Balga.*

The trial court found the weight of the evidence supported the City Council's finding that Krause assaulted Balga causing him to run for safety. Substantial evidence of Krause's assault on Balga included the arbitration hearing testimony of Balga. His testimony showed that after Balga took off his jacket in the parking lot, Krause and seven other men, who had been with Krause, got out of their vehicles and started crowding Balga. Balga testified that Krause advanced on him as if Krause were "trying to find . . . a good way to like get a good punch in or whatever." Balga backed up to the restaurant's door as Krause and the others advanced on him, then Balga turned and ran into the restaurant's kitchen. That testimony was sufficient to support the finding that Krause assaulted Balga causing him to run for safety.

Krause argues Balga's testimony was not sufficient to support that finding because the arbitrator did not find Balga credible. The arbitrator's role, pursuant to the applicable memorandum of understanding between the City and the Westminster Police Officers' Association, and as acknowledged in the petition, was to "make a non-binding recommendation to the City Council who shall be responsible for a final decision on the matter." Krause's argument that the arbitrator's credibility determinations must be binding on the City is directly at odds with the express terms of the memorandum of understanding, which establish the arbitrator's findings are advisory only.

---

[4] Krause does not argue that even if these findings were supported by substantial evidence, they would not constitute violations of the cited policy sections of the manual.

10

In any event, it was the province of the trial court, in reviewing the City's decision by exercising its independent judgment, to itself reweigh the evidence and make its own determination as to the credibility of witnesses. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 ["[A]n exercise of independent judgment *does* permit (indeed, it requires) the trial court to reweigh the evidence by examining the credibility of witnesses. As we explained 20 years ago, in exercising its independent judgment 'the trial court has the power and responsibility to weigh the evidence at the administrative hearing *and to make its own determination of the credibility of witnesses.*'"]; see *Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 819.) Krause does not argue the trial court misunderstood or misapplied the applicable standard of review in this case. We find no error.

B.

*Substantial Evidence Showed Krause Grabbed and Pushed Avila.*

The trial court found Krause grabbed and shoved Avila. Multiple witnesses, including members of Krause's group, testified that Krause grabbed and shoved Avila, causing her to stumble back several steps.

Omar Ayala, who was part of Krause's group and a fellow police officer, testified, "Peter did grab her in the shoulders area and pushed her off and told her to 'Get off me,' something to that effect." Ayala saw Avila stumble several steps from the push. Daniel Flynn, also a fellow police officer, testified that he saw Krause push Avila to prevent her from striking him. Hill testified Krause grabbed and pushed Avila. Lilley testified that "it was definitely an aggressive push" and the man who pushed Avila said something to the affect of "I'm not afraid to hit a bitch." (Lilley did not identify the man who pushed Avila.)

The grabbing and shoving of Avila was a significant event as the evidence showed it triggered the brawl. Lilley testified that until Krause shoved Avila, nobody had been harmed, there had been no fighting, and "all of the physical altercations started at

11

that point." Hill testified that after Avila had been pushed, "then that is when it kind of started from there." Substantial evidence supported this finding.

## C.

### *Substantial Evidence Showed Krause Assaulted Carpenter.*

Balga testified that he saw Krause "throwing a right hand, a vicious right hand, going straight down like that onto [Carpenter's] head," as Carpenter lay unconscious on the ground in the parking lot. Balga stated that Krause "rain[ed] down that one last blow" which, Balga said, looked "like an absolutely brutal blow." In addition, Ayala testified that during the internal affairs investigation, he told an investigator that Krause had admitted to him that he "had started punching someone."

Fong, who responded to the fight, testified Alexander (who did not testify at the arbitration hearing) told him she saw Krause punch Carpenter knocking him to the ground and saw Krause punch and kick Carpenter when he was on the ground. Hill told Fong that Krause kicked or punched Carpenter while on the ground more than five times. Ayache, who also did not testify at the arbitration hearing, told Detective Scott Winks of the Huntington Beach Police Department that she saw Krause kicking Carpenter while he lay on the ground.

Krause argues Alexander's and Ayache's statements to law enforcement should not have been considered because they did not testify at the arbitration hearing and were not subject to cross-examination. The trial court responded to this argument in its minute order denying the petition, by stating: "The Westminster Personnel Policy Manual and Westminster Municipal Code specifically permit the arbitrator to make findings of fact supported by hearsay evidence in that they state that 'technical rules which are employed to exclude evidence in criminal and civil court trials shall not be applied' and that the Board is to consider 'all evidence presented to it.'" Article X of the Westminster Personnel Policy Manual contains the above language quoted by the trial

12

court and is included in the administrative record. Krause does not address these applicable evidentiary rules in his appellate briefs. We find no error.

## III.

### KRAUSE'S RIGHT TO DUE PROCESS WAS NOT VIOLATED.

In his opening brief, Krause argues: "As part of the Final Notice of Disciplinary Action the Department cites vari[ou]s policy violations allegedly committed by KRAUSE. Included in the Notice of Final Disciplinary Action, Waller specifically mentions four other events not associated with the incident occurring on 17 July 2009. These four events were not a part of the Notice of Intent dated 8 March 20[10] or were those four events discussed during the Skelly with Waller on 31 March 20[10]. [¶] One of the four items not previously disclosed in the Notice of Intent was the existence of another administrative investigation alleging KRAUSE engaged in similar conduct, that is being removed from a club for attempting to engage in a fight. . . . Although a Skelly hearing was conducted, it failed to provide all of the safeguards enumerated in *Skelly,* supra. The department utilizing other material not previously disclosed and depriving KRAUSE with an opportunity to respond to those new allegations violated those due process safeguards. [¶] It is clear from the language used by Waller that at least some of the four events not previously disclosed were part of basis for the level of discipline imposed."

Again, the trial court addressed Krause's argument in its minute order denying the petition, stating, "the administrative record shows that Admin Case 09-037 was not used [as] a basis for any discipline imposed on the petitioner. The Notice of Intent did not mention Admin Case 09-037. At the arbitration hearing, the Chief testified that Admin Case 09-037 was listed in the Final Notice, but was not relied upon to make any of the determinations in this case. The Chief testified that the Denny's incident alone was sufficient for termination." Krause does not address the trial court's reasoning. In

13

any event, the record establishes Krause had ample opportunity at the arbitration hearing to respond to any of the "new allegations," which was not relied upon to uphold the decision to terminate his employment. Krause has failed to demonstrate any violation of his right to due process.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.